# Mary A. Jones, Admx. v. Ala. Mineral Railroad Co.

*Action by Administratrix for Wrongfully Causing Death of Plaintiff's Intestate.*

1.  *Ruling on demurrer not set out in record can not be reviewed.*—The overruling of a demurrer can not be reviewed, on appeal, where the demurrer is not set out in the record

2.  *Charge of court as to negligence.*—A charge that "If the jury believe from the evideace that Bill Scott was section boss, and John Jones (plaintiff's intestate) was one of the hands in the employ of said Bill Scott, and that said Bill Scott had control of the running of the two hand cars spoken of by the witnesses, and that while crossing the bridge over the Coosa river, in accordance with his orders, at a great rate of speed, and that said hand cars were running about 15 or 20 feet apart, and that, just after the two cars had crossed the iron part of the bridge, he gave a signal to the hands on the front car to check up, without first giving warning to those on the rear car; and if they further believe, from the evidence, that at the time said Bill Scott gave a signal to those on the front car, Woods put his foot on the brake, and checked it up; and if they further believe from the evidence that the checking up the front car caused Guy to put his foot on the brake of the second car, and that the handle of the lever was jerked out of John Jones' hands by the putting on the brake by Guy, and that said rear car ran into the front car, and "threw John Jones to the ground and killed him, then the jury must find for the plaintiff," hypothesizes facts which constitute negligence on the part of the defendant, and exclude contributory negligence on the part of plaintiff, and its refusal is error.

Vol. 107.

Mary A. Jones, Admx. v. Ala. Mineral Railroad Co.]

3. *Same.*—A charge that "If the jury believe from the evidence that at the time John Jones (plaintiff's intestate) was killed he was in the employ of the Alabama Mineral Railroad Company, and that Bill Scott was the foreman or section boss, and that the deceased was on a hand car at the time of the accident: and if they further believe that said hand cars were operated under the direction of Bill Scott, and that said Bill Scott told the deceased and the other hands to go over the Coosa river bridge as fast as they could, and that in compliance with said orders the hands started across said bridge at a great rate of speed, and that they were running about 15 or 20 feet apart, and that just after they passed the iron part of the bridge, the said Bill Scott waved his hand to those on the front car to slow up, and that John Woods at once placed his foot on the brake of the front car, and checked it up; and if they further believe that Lee Benson, as soon as John Woods put his foot on the brake, waved to the hindmost car to check up, and that Guy at once placed his foot on the brake; and if they further believe that the placing of Guy's foot on the brake suddenly checked the speed of the car, jerked the handle of the lever out of John Jones' hands; and if they further believe that before he could recover and get hold of the handle the hindmost car ran into the front car and threw Jones off and he was killed, then the plaintiff is entitled to damages." hypothesizes facts which constitute negligence on the part of defendant and exclude contributory negligence on the part of plaintiff, and its refusal is error.

4. *Charge as to character of defendant's negligence that will excuse plaintiff's contributory negligence.*—A charge that "If the jury believe from the evidence that John Jones (plaintiff's intestate) came to his death by and on account of the gross negligence of the defendant, or of its servant or employé, who had charge of the hand car, with which the one on which Jones was, collided, then they must find for the plaintiff, although the jury should believe from the evidence that said Jones was guilty of simple contributory negligence;" incorrectly defines the character of defendant's negligence which would overcome contributory negligence on plaintiff's part, and its refusal is not error, especially where the complaint fails to allege wanton, reckless or intentional negligence.

5. *Same.*—A charge that "Even if the jury should believe from the evidence that John Jones (plaintiff's intestate) was guilty of simple contributory negligence, still they must find for the plaintiff if they are reasonably satisfied from the evidence that Jones' death was caused by the gross negligence of the defendant, or its servant or employé who had charge of the front hand car," incorrectly defines the character of defendant's negligence that will overcome contributory negligence on plaintiff's part. and its refusal is not error, especially where the complaint fails to allege wanton, reckless or intentional negligence.

6. *Argumentative charge.*—A charge that "If two witnesses testify about a transaction and one of the said witnesses was immediately at

the scene of the transaction, and the other witness was some distance off, then the jury may look to this in determining which witness they will believe," is properly refused as being argumentative.

7. *Charge as to conflicting testimony.*—A charge that "If two witnesses of equal credibility testify in conflict with each other, the jury may look to the opportunity of the two witnesses to know the facts about which they testify in determining which witness they will believe," is free from error and should be given.

8. *Same* —A charge that, "If there is a conflict in the evidence, then the jury may look to the opportunities and means of knowledge of the various witnesses in determining which of them they will believe" is free from error.

9. *Same,*—A charge that, "The jury may look to the opportunities of the witnesses for observing and knowing the facts which they testify about in determining which witness they will believe," is free from error.

10. *Charges as to burden of proof*—A charge that, "The burden of showing that John Jones, (plaintiffs intestate), was killed by the negligence of the defendant or its employe Scott is on the plaintiff in this case" properly places the burden of proof and should have been given.

11. *Same.*—A charge that, "The mere fact that John Jones (plaintiffs intestate) was killed by a fall from the hand car, while traversing a bridge on defendants railroad, is not evidence that the killing was caused by the negligence of defendants agent or servants" is free from error and its refusal is improper.

12. *Charge as to contributory negligence when complainant fails to aver wanton, reckless or intentional negligence.*—In an action against a railroad company for wrongfully causing the death of the plaintiff's intestate an instruction requested by plaintiff predicated on facts sufficient to overcome his intestate's contributory negligence, is properly refused where the complaint fails to allege wanton, reckless or intentional negligence.

13. *A charge as to due care by party injured.*—A charge that, "If the jury believe from the evidence that the said John Jones, (plaintiffs intestate) was riding on the rear end of a hand car, in front of which was another hand car, and that both were running in the same direction across a bridge on defendants road; and if they further find from the evidence that the said hand cars ran together, or that the rear car overtook the first, whereby a jar was caused; and if they further believe that if said Jones had been properly grasping the handle of said car, (and that he was not properly grasping it), that he would not have fallen therefrom, then they must find for the defendant" does not properly define to the jury the kind and degree of care the person injured should have exercised for his own safety and should have been refused.

14. *Same; on the part of defendant.*—A charge that "If the jury believe from the evidence that while crossing said bridge W. A. Scott, who

[Mary A. Jones, Admx. v. Ala. Mineral Railroad Co.]

was the foreman in chage of both of said hand cars, gave the usual and customary signal to stop said cars, and that the brakes on both were applied in the usual and customary manner, and that the said John Jones, (plaintiff's intestate) by his failure to use proper prevention for his own personal safety, fell from said hand car, then they must find for defendant" while technically correct as a proposition of law, is, as applied to the evidence, misleading in its tendencies in defining the constitutents of due care on defendants part, and should have been refused.

15. *Same.*—A charge that "It was not negligence in the said Scott to warn both hand cars at the same time; and, if the jury believe from the evidence that Guy applied the brake on the rear car in the usual manner and customary way, then, although they may believe that said John Jones (plaintiff's intestate) fell in consequence of the application of said brake, they must find for the defendant," is misleading in its tendencies in defining the constituents of due care on defendant's part.

16. *Charge unduly limiting duties of defendant as to party injured.*—A charge that "The court charges the jury that if they believe from the evidence that the ordinary application of the brakes would not cause the said lever to jerk or jar sufficiently to loose a man's hold, and, that the brakes in this case were so applied, they must find for the defendant," is erroneous inasmuch as it assumes that the only duty defendant owed plaintiff's intestate was not to cause a jerk or jar sufficient to loose a man's hold—while it was for the jury to determine from all the circumstances whether defendant owed other duties to said intestate.

17. *Charge as to due care of injured party when peril is apparent*—A charge that "The court charges the jury that the plaintiffs intestate owed a greater or less duty to exercise care and caution, according as he was in a place more or less dangerous; and if the jury find from the evidence that the said John Jones, (plaintiff's intestate) was in such a situation that his peril was apparrent to any one of ordinary intelligence, and that he failed to exercise the degree of care required, and that such failure contributed to his injury and death, then they must find for the defendant," was properly given.

18. *Charge as to duty of injured person to select the safer of two different modes of doing the act from which injury results.*—A charge that "If the jury believe from the evidence that there was a less dangerous way for the said John Jones, (plaintiffs intestate) to conduct himself while on said moving hand car, and that he failed to choose the safest way, and that such failure contributed proximately to his injury and death, then he was guilty of contributory negligence, and plaintiff cannot recover," was properly given.

Appeal from the Circuit Court of Shelby.
Tried before the Hon. LeRoy F. Box,

This suit was brought by plaintiff, as the administratrix of the estate of John Jones, deceased, to recover damages for the killing of her intestate, which is alleged to have been caused by the negligence of the defendant. The defendant pleaded the general issue, contributory negligence, and the following special plea: "(4) For further answer to said complaint, and to each count thereof, defendant says that plaintiff's intestate contributed proximately to his own injury and death, in this: That plaintiff's intestate was a section hand, and that it was part of his duties to propel the lever car, upon which he was riding, by means of a handle or lever, and that it was his duty to grasp said handle or lever with one or both hands while said car was running; and defendant avers that at the time of the alleged injury and death the said John Jones was riding on the rear end of a hand car, which was moving, and in front of which, and near to it, was another moving hand car, going in the same direction, yet, notwithstanding this, said John Jones failed to grasp or hold to said lever or handle of said car, but stood at the rear end thereof, and was negligently and carelessly looking up and down the river over which said cars were passing, or was looking backwards at said time, without holding onto any part of said car, or to the handle thereof, which was an unsafe and dangerous way of crossing said river and trestle on a moving hand car, and but for such negligent conduct of plaintiff's intestate said injury and death would not have happened,— wherefore defendant says that plaintiff's intestate contributed directly and proximately to his own injury and death." The judgment entry recites that the demurrer to special plea No. 4 was overruled, but the demurrer is not set out in the record. Plaintiff filed a replication to the fourth plea, in which she alleged "that her intestate was holding to said handles, and continued to so hold till he was knocked loose by the sudden putting on of the the brakes of the car on which he was riding, which said putting on of said brake suddenly had become necessary by reason of the sudden stopping of the car in front, and that immediately after his hands were so knocked loose by said putting on of said brake, and before he had time to recover his hold on said brake, the car he was on ran into the car in front, by reason of which he was thrown out of said car to the ground below, and killed; and she

denies that her intestate was guilty of any such contrib-
utory negligence as would bar the defendant's liability
for his death." Issue was joined upon this replication,
and also upon the pleas of the general issue and contrib-
utory negligence.

It was shown by the evidence that, at the time of the
accident which resulted in the death of the plaintiff's in-
testate, the deceased was a section hand on the defend-
ant's road, and that one Bill Scott was the section fore-
man under whose supervision and direction the plain-
tiff's intestate worked. The plaintiff's testimony tended
to show that on the day of the accident the plaintiff's in-
testate and seven other section hands were on two hand
cars ; that, just before crossing a bridge upon defendant's
road over the Coosa river, the foreman ordered the sec-
tion hands to run the two hand cars across the bridge
very rapidly ; that these hand cars were operated by
levers, four section hands and the foreman being on the
car in front, and the plaintiff's intestate and three others
being on the rear car, the plaintiff's intestate being on
the rear end of said car ; that both cars started across
the bridge at a very rapid rate of speed, the rear car
being behind the front car only from 15 to 25 feet ; that
just after the cars had passed the iron part of the bridge,
and while they were on the trestle portion of the bridge,
Scott, the foreman, with his back to the section hands
on both of the cars, and without looking to see how close
the rear car was to the front car, threw out his hands, as
a signal to stop, but that, on account of the position of
the foreman, the hands on the rear car could not see the
signal ; that, as soon as the signal to stop was given, one
of the hands on the front car immediately put his foot
on the brake, and checked the said car, and that another
one of the hands on the front car signaled to the rear car
to stop ; that, in response to this signal, one of the hands
on the rear car put his foot on the brake to stop said rear
car, and suddenly checked its speed, thereby causing the
handle of the lever to be jerked out of the hands of the
plaintiff's intestate ; that, up to this time, Jones, the
plaintiff's intestate, had the handle in his hand, pulling
the lever ; that, before he could recover the handle, the
car collided with the front car, and that thereby Jones,
the plaintiff's intestate, was thrown off of said car to the
ground below, about 15 feet, and instantly killed. There

was also testimony for the plaintiff tending to show that this was an unusual place for said cars to stop. One of the witnesses for the defendant, who was sitting on the side of the road at the end of the trestle, a short distance from where the plaintiff's intestate was thrown from the car, testified that from his position he could see both of the cars after they left the iron part of the bridge ; that, after the cars left the iron portion of the bridge, and came upon the trestle, the plaintiff's intestate did not have hold of the handle of the lever, but was standing erect, looking up and down the river. The testimony of several of the hands who were on the two cars was to the same effect. The defendant's testimony further tended to show that the cars were not going at an unusual rate of speed ; that the signal given by the foreman to stop was the signal usually given for that purpose ; that there was no violent jerk of the cars when the brakes were applied, and that if the plaintiff's intestate had been holding to the handle of the lever, as it was his duty to do, he would not have been thrown from the car ; that the collision was not very violent, and that the application of the brakes, as made in this instance, did not jerk the handle out of the hands of the other men who were pulling the lever, and that neither of the other men on the cars was injured by applying the brakes or by the collision.

The plaintiff requested the court to give the following written charges to the jury : (1) "If the jury believe from the evidence that Bill Scott was section boss, and John Jones was one of the hands in the employ of said Bill Scott, and that said Bill Scott had control of the running of the two hand cars spoken of by the witnesses, and that while crossing the bridge over the Coosa river, in accordance with his orders, at a great rate of speed, and that said hand cars were running about 15 or 20 feet apart, and that, just after the two cars had crossed the iron part of the bridge, he gave a signal to the hands on the front cars to check up, without first giving warning to those on the rear car ; and if they further believe from the evidence that, at the time said Bill Scott gave a signal to those on the front car, Woods put his foot on the brake, and checked it up ; and if they further believe from the evidence that the checking up the front car caused Guy to put his foot on the brake of the second car, and that

[Mary A. Jones, Admx. v. Ala. Mineral Railroad Co.]

the handle of the lever was jerked out of John Jones' hands by the putting on the brake by Guy, and that said rear car ran into the front car, and threw John Jones to the ground and killed him,—then the jury must find for the plaintiff." (2) "If the jury believe from the evidence that at the time John Jones was killed he was in the employ of the Alabama Mineral Railroad Company, and that Bill Scott was the foreman or section boss, and that the deceased was on a hand car at the time of the accident; and if they further believe that said hand cars were operated under the direction of said Bill Scott, and that said Bill Scott told the deceased and the other hands to go over the Coosa river bridge as fast as they could, and that in compliance with said orders the hands started across the bridge at a great rate of speed, and that they were running about 15 or 20 feet apart, and that, just after they passed the iron part of the bridge, the said Bill Scott waved his hand to those on the front car to slow up, and that John Woods at once placed his foot on the brake of the front car, and checked it up; and if they further believe that Lee Benson, as soon as John Woods put his foot on the brake, waved to the hindmost car to check up, and that Guy at once placed his foot on the brake; and if they further believe that the placing of Guy's foot on the brake suddenly checked the speed of the car, jerked the handle of the lever out of John Jones' hands; and if they further believe that before he could recover and get hold of the handle the hindmost car ran into the front car and threw John Jones off, and he was killed,—then the plaintiff is entitled to damages." (3) "If the jury believe from the evidence that John Jones came to his death by and on account of the gross negligence of the defendant, or its servant or employé who had charge of the hand car, with which the one on which Jones was, collided, then they must find for the plaintiff, although the jury should believe from the evidence that said Jones was guilty of simple contributory negligence." (4) "Even if the jury should believe from the evidence that John Jones was guilty of simple contributory negligence, still they must find for the plaintiff if they are reasonably satisfied from the evidence that Jones' death was caused by the gross negligence of the defendant, or its servant or employé who had charge of the front hand car." (5) "The

fact that Jones was guilty of simple contributory negligence in not holding to the lever, even if the jury so believe from the evidence, will not take away plaintiff's right to recover damages if the jury further so believe that Jones' death was proximately caused by such gross negligence on the part of the defendant, or its employé who had charge of the front hand car, as shows a reckless and wanton disregard of human life." (6) "The defense of simple contributory negligence cannot be maintained in cases where the evidence shows the injury to have been caused by such gross negligence on the part of a defendant as shows a wanton and reckless indifference to the safety of human life; and if, in this case, the evidence shows that Jones' death was caused by such gross negligence on the part of the defendant, or employé in charge of the front hand car, then the jury must find for the plaintiff; and it makes no difference whether Jones was guilty or not of simple contributory negligence." (7) "If two witnesses testify about a transaction, and one of the said witnesses was immediately at the scene of the transaction, and the other witness was some distance off, then the jury may look to this in determining which witness they will believe." (8) "If two witnesses of equal credibility testify in conflict with each other, the jury may look to the opportunity of the two witnesses to know the facts about which they testify in determining which witness they will believe." (9) "If there is a conflict in the evidence, then the jury may look to the opportunities and means of knowledge of the various witnesses in determining which of them they will believe." (10) "The jury may look to the opportunities of the witnesses for observing and knowing the facts which they testify about in determining which witness they will believe."

The plaintiff separately excepted to the court's refusal to give each of the charges asked by her, and also separately excepted to the court's giving, at the request of the defendant, each of the following written charges: (2.) "The burden of showing that said John Jones was killed by the negligence of defendant or its employé Scott is on the plaintiff in this case." (3.) "The mere fact that John Jones was killed by a fall from the hand car, while traversing a bridge on the defendant's railroad, is not evidence that the killing was caused by the

negligence of the defendant's agent or servants." (4.) "If the jury believe from the evidence that the said John Jones was riding on the rear end of a hand car, in front of which was another hand car, and that both were running in the same direction across a bridge on defendant's road; and if they further find from the evidence that the said hand cars ran together, or that the rear car overtook the first, whereby a jar was caused; and if they further believe that if said John Jones had been properly grasping the handle of said car (and that he was not properly grasping it), that he would not have fallen therefrom,—then they must find for the defendant." (6.) "If the jury believe from the evidence that while crossing said bridge W. A. Scott, who was the foreman in charge of both of said hand cars, gave the usual and customary signal to stop said cars, and that the brakes on both were applied in the usual and customary manner, and that the said John Jones, by his failure to use proper prevention for his own personal safety, fell from said hand car, then they must find for the defendant." (8.) "It was not negligence in the said Scott to warn both hand cars at the same time; and, if the jury believe from the evidence that Guy applied the brake on the rear car in the usual manner and customary way, then, although they may believe that said John Jones fell in consequence of the application of said brake, they must find for the defendant." (9.) "The court charges the jury that if they believe from the evidence that the ordinary application of the brakes would not cause the said lever to jerk or jar sufficiently to loose a man's hold, and that the brakes in this case were so applied, they must find for the defendant." (10.) "The court charges the jury that the plaintiff's intestate owed a greater or less duty to exercise care and caution, according as he was in a place more or less dangerous; and if the jury find from the evidence that the said John Jones was in such a situation that his peril was apparent to any one of ordinary intelligence, and that he failed to exercise the degree of care required, and that such failure contributed to the injury and death, then they must find for the defendant." (11.) "If the jury believe from the evidence that there was a less dangerous way for the said John Jones to conduct himself while on said moving hand car, and that he failed to choose the safest

[Mary A. Jones, Admx, v. Ala. Mineral Railroad Co.]

way, and that such failure contributed proximately to his injury and death, then he was guilty of contributory negligence, and plaintiff can not recover."

There were verdict and judgment for the defendant. Plaintiff appeals, and assigns as error the overruling of her demurrer to defendant's special plea No. 4, and the refusal to give the charges asked by the plaintiff, and the giving, at the request of the defendant, the charges asked by it.

A. P. LONGSHORE and BROWNE & McMILLAN, for the appellant.

CHARLES P. JONES and PETERS, WILSON & LYMAN, for the appellee.

HEAD, J.—Plaintiff's demurrer to the 4th plea, which was overruled, is not set out in the record, and we can not pass upon it. We remark, however, that we can see no objection whatever to the plea.

We are of opinion the facts hypothesized in the first and second charges requested by the plaintiff constituted negligence on the part of the defendant, and excluded contributory negligence on the part of the plaintiff. These charges ought, therefore, to have been given.

Charges 3 and 4 requested by plaintiff incorrectly define the character of negligence which will overcome contributory negligence, as we have many times decided; and besides the plaintiff has not alleged wanton, reckless or intentional negligence. We have held that this character of negligence must be alleged as well as proven in order to overcome contributory negligence.—*Markee v. L. & N. R. R. Co.*, 103 Ala. 160 and cases cited.

We think plaintiff's charge 7 comes within the influence of many adjudications of this court defining argumentative instructions, and was properly refused; but charges 8, 9, and 10 are free from that vice and ought to have been given. The burden was on plaintiff to prove the negligence alleged, and chages 2 and 3 requested by defendant were proper.

Charges 5 and 6 requested by plaintiff assert correct propositions of law if wanton, reckless or intentional negligence on defendant's part had been alleged; but

[Mary A. Jones, Admx. v. Ala. Mineral Railroad Co.]

that character of negligence was not alleged, and these charges were, therefore, improper.

It was the duty of Jones, the deceased, riding upon the hand car, to exercise reasonable care for his safety. What was reasonable care was for the jury to determine from all the facts surrounding him at the time. Charge 4 requested by defendant asserts that, if Jones "had been *properly* grasping the handle of said car (and that he was not properly grasping it) that he would not have fallen therefrom," then the jury must find for the defendant. We think this is not a fit method of defining to the jury the kind and degree of care which a person injured should have observed for his own safety. What is meant by *properly* grasping the handle of the car? We readily conceive that a person situated as deceased was may have grasped the handle of the car in an improper manner, so far as an efficient execution of the work he was charged with doing was concerned, yet if grasping the handle was a duty he owed to his own safety, the improper manner, if grasping it as above stated, might have been just as efficacious for his safety as it would have been had he been grasping it in a proper way for the execution of his work. The expression, "properly grasping the handle" is not the correct way of submitting to the jury the degree of care Jones should have observed. That charge ought, therefore, to have been refused.

We think charge 6 requested by defendant technically asserts a correct proposition of law, in that it asserts that the defendant was entitled to recover if Jones by his failure to use proper precaution for his own personal safety, fell from the car. If he was guilty of that sort of negligence causing him to fall, the defendant, under the pleadings in this case, was entitled to recover, without regard to the character of its own negligence. We cannot, therefore, say that the giving of the charge was error; but it may have been well refused (and should have been) because of its misleading tendencies in defining the constituents of due care on defendant's part. Its language would lead to the conclusion that if the usual and customary signal to stop was given, and the brakes of both cars were applied in the usual and customary manner, the defendant was not guilty of any negligence. Whether or not the giving of the signal and ap-

[National Fertilizer Co. v. Holland.]

plication of the brakes in the usual and customary manner was all the defendant was required to do, depends upon the peculiar circumstances. It might be that the usual and customary way of stopping and applying the brakes, when there were two cars, running very rapidly, upon a high trestle, the one very close behind the other, as the plaintiff's evidence tends to show was the fact in this case, would be highly dangerous. In other words, the peculiar circumstances may have called for other and different precautions from those usual and customary. Whether so or not, should be left to the jury to determine. For these reasons, charge 8 ought to have been refused. Charge 9 assumes that the only duty defendant owed was not to cause a jerk or jar sufficient to loose a man's hold. Whether there was, under the circumstances, other duties than this owing to the deceased should be determined by the jury.

We think charges 10 and 11 are technically correct, and it was not error to give them.

For the errors mentioned the judgment is reversed and the cause remanded.

Reversed and remanded.