# Alabama Mineral Railroad Co. v. Jones, Admx.

*Action against a Railroad Company by Administratrix of a Deceased Employé to recover Damages for his Killing.*

114  519
128  255
128  256
114  519
132  489
114  519
144  217

1. *Action for death of employé; admissibility in evidence of collective fact.*—In an action against a railroad company by the administratrix of a section hand, to recover damages for the killing of her intestate, which was alleged to have been caused by the sudden stopping, under the direction of the foreman, of a hand-car which was immediately in front of another hand-car upon which the deceased was riding, evidence that the place where the collision occurred—on an abutting trestle of a river bridge—was a dangerous place, is the statement of a collective fact, and is, therefore, admissible.

2. *Evidence; expert testimony.*—The evidence of an expert as to matters within the common knowledge of the jury is inadmissible.

3. *Same; when ruling not reversible error.*—The allowance of an improper question by the trial court does not constitute a reversible error, where the answer is shown to be favorable to the party objecting.

4. *Action by employé's administrator for injuries causing death; measure of damages.*—In an action against a railroad company for alleged negligent killing of an employé, brought by the decedent's administratrix, where it is shown that it took all of his wages to support himself and family, the damages recoverable are limited to the pecuniary loss sustained by persons for whose benefit the recovery enures, and hence there must be a deduction of the amount of wages expended by the decedent upon himself.

5. *Same; evidence as to who were dependent upon intestate admissible.* In an action against a railroad company for the alleged negligent killing of an employé, brought by the decedent's administratrix, where the

[Alabama Mineral Railroad Co. v. Jones, Admx.]

evidence is circumstantial as to what proportion of the earnings of deceased were consumed in his own support, it is competent to show how many and what dependents there were who relied upon him, and their ages; such evidence being a circumstance in determining the pecuniary loss sustained by the intestate's death.

6. *Charge invading the province of the jury; mortuary tables.*—A charge which instructs the jury that the life expectancy was a fixed number of years as shown by the mortuary tables invades the province of the jury, since it is for the jury to determine from all the facts what was such expectancy; the tables of mortality not being conclusive thereof.

7. *Action by administrator of employé for injuries causing death; measure of damages; charge to the jury.*—In an action against a railroad company by the administrator of a deceased employé, to recover damages for the alleged negligent killing of plaintiff's intestate, a charge which instructs the jury that the measure of damages, in the event of recovery by the plaintiff, is "an amount equal to the present cash value of" the decedent's life, "to his family dependent upon him, during his expectancy of life," is within the rule as to the measure of damages in such case, and is properly given.

8. *Same; same.*—In such a case a charge which instructs the jury that if they believe from the evidence the plaintiff is entitled to recover, he is entitled to recover an amount equal to the decedent's "pecuniary worth to his family who were dependent upon him from the time of his death to this time, added to the present cash value of his pecuniary worth to his said family during the balance of his expectancy of life," is properly given.

9. *Same; charge to the jury.*—In such a case, where the complaint alleges that while plaintiff's intestate and other section hands were' taking two lever cars over a river bridge in obedience to the orders and direction of the defendant's section foreman in the exercise of his authority, and while both cars were going at a high rate of speed, the said section foreman negligently stopped his car suddenly while it was in front of another car, without first ordering the rear car to stop "or" notifying those on it of his intention to stop the car he was on, which caused a collision, whereby plaintiff's intestate was knocked off and killed, a charge to the jury which instructs them that they should find for the defendant if either of the alternatives be not proven, or which requires proof of both of the alternatives, is erroneous and properly refused.

10. *Same; same.*—In such a case it is a question for the jury whether or not it was negligence for a section foreman to run the two cars, when closely following the other, at a high rate of speed over the river bridge; and a charge is properly refused which withdraws the consideration of this question from the jury.

11. *Same; same.*—In such a case where there was evidence that the foreman caused the brakes on the front car to be suddenly applied, without causing those on the rear car to slacken their speed, a charge

is properly refused which instructs the jury that if the deceased was holding the handle of the lever and was thrown loose from the same by the sudden putting on of the brake by one G. (another section hand), that then they must find for the defendant; since it can not be said as a matter of law that the act of "G." was negligent or wrongful and was not rendered reasonably necessary by the negligence of the foreman who was riding on the front car.

12. *Same; same.*—It is also proper to refuse to charge that if the other section hands riding on the rear car jerked the handle in front, and caused deceased to lose his hold of the handle, the jury should find for the defendant.

13. *Same; same.*—In such a case a charge that, if the evidence left the jury in doubt as to what threw deceased from the car, they should find for defendant, is properly refused.

14. *Same; same.*—In such a case, it is also proper to refuse a charge which declared that it was negligence in deceased to have hold of the handle with only one hand.

15. *Same; same.*—In such a case a charge which instructs the jury that if the evidence leaves them in doubt as to what threw the plaintiff's intestate from the car, then they must find for the defendant, states an incorrect measure of proof, and is properly refused.

16. *Same; same.*—In such a case, a charge which instructs the jury to find for the defendant if G. (another section hand upon the rear car) promptly obeyed the signal given him by the foreman, and that he saw it when the foreman gave it, and applied the brake to the rear car in the usual manner, and this was the appliance for checking the speed of said car, is properly refused; said charge ignoring the question whether, under the circumstances, the signal given by the foreman involved negligence on his part.

17. *Same; same.*—In such a case, a charge which instructs the jury that the plaintiff can not recover if one of the section hands upon the front car applied the brakes too suddenly and in an improper manner, and checked the speed of the front car too rapidly, and that caused the accident, is properly refused; the charge ignoring the question whether the acts of such section hand on the front car were superinduced by the negligent order of the foreman.

18. *Same; same.*—In such a case the court properly refused to charge that if the signal was given by the foreman for both cars to check their speed at the same time, and it was known by those on the rear car, and G. properly applied the brake to it in the usual manner, the jury must find for defendant.

19. *Same; same.*—In such a case, a charge which instructs the jury that they may look "to the fact, if they find it to be a fact, that no one else fell off of said car, in connection with all the other facts in the case in determining whether or not said Jones was grasping the handles in a manner to properly protect his own safety," is properly refused; such charge singling out a particular fact for the special attention of the jury.

[Alabama Mineral Railroad Co. v. Jones, Admx.]

APPEAL from the Circuit Court of Shelby.

Tried before the Hon. GEORGE E. BREWER.

This action was brought by the appellee, Mary A. Jones, as the administratrix of the estate of John Jones, deceased, against the Alabama Midland Railroad Company, to recover damages for the alleged negligence of the defendant, which resulted in the death of the plaintiff's intestate.

The principal facts in this case are substantially the same as found in the report of the case on the former appeal (107 Ala. 400) ; and special reference is here made to that report.

The complaint contained two counts, and the cause of action stated in these two counts, and the defense set up in the pleas, and the facts pertaining to the rulings of the court reviewed on the present appeal, are all sufficiently stated in the opinion.

It was shown on the trial that John Jones, the plaintiff's intestate, was a section hand on the defendant's railroad, and W. A. Scott was the section foreman or boss for the defendant at the section at which plaintiff's intestate was at work.

The defendant's evidence tended to show that as the two hand-cars were going over the trestle abutting the railroad bridge crossing the Coosa river, where the accident occurred, Scott, the section boss, who was riding on the first car, instructed the men on his car to stop the car, and also signalled the car upon which the plaintiff's intestate was riding, and which was following immediately upon the car upon which the section boss was; that thereupon John Woods, who was on the first car, put on the brakes and stopped the car instantly, and one Guy, who was on the car with defendant, applied the brakes on said car and tried to stop it, but was unable to do so before it collided with the car in front.

Upon the introduction of all the evidence, the court at the request of the plaintiff gave to the jury the following written charges : (1.) "If the jury believe from the evidence that Scott, the section boss of the defendant, ordered the section hands to run the two hand-cars across the bridge, and that said section hands, in compliance with said order, started across the bridge with said hand-cars, one following fifteen or twenty feet behind the other, and that while on the trestle, after crossing the

bridge, said Scott, who was on the front car, made a sign for the hands on said hand-car to stop or check up, without first ordering the rear car to check up or giving those on said rear car sufficient notice of his intention to check up the front car, and that immediately, as soon as those on the rear car discovered the checking of the front car, one of the hands on the rear car suddenly put on the brake of said car, and that this was the best thing to do under the circumstances in order to avoid a collision between the two cars, and that plaintiff's intestate, John Jones, was on said rear car at the time, and that he was at his post in discharge of his duty beside one of the handles of the lever, with his hands upon the same, working it in order to propel the car, and that said putting on of the brake snatched the handle out of his hands, and that before he was able to recover it, the rear car ran into the front car, and thereby threw the said John Jones to the ground and killed him, then they must find for the plaintiff." (2.) "If the jury believe from the evidence that Scott, the section boss of defendant, ordered the section hands to run the hand-cars across the bridge, and that said section hands, in compliance with said order, started across the bridge with said hand-cars, one following the other 15 to 25 feet behind the other, and that while on the trestle, after crossing the bridge, the said Scott, who was on the front car, made a sign to the hands on that car to put on the brake and check up without first ordering the rear car to check up, or giving those on said rear car sufficient notice of his intentions to check the front car, and that immediately, as soon as those on the rear car discovered the checking of the front car, one of the hands on the rear car suddenly put on the brake of said car and that that was the best thing to do under the circumstances in order to avoid a collision of the front car, and that plaintiff's intestate, John Jones, was on said rear car at the time and that he was at his post of duty, beside one of the handles of the lever, with his hands upon the same, working it in order to propel the car, and that said putting on of the brakes snatched the handles out of his hands, and that before he was able to recover it the rear car ran into the front car and thereby threw said John Jones to the ground and killed him, then they must find for the plaintiff." (3.) "If the jury believe

from the evidence that John Jones came to his death by reason of section foreman Scott's negligently and carelessly causing his car to be checked up without sufficient notice to those on the rear car, and that by reason of this the rear car collided with the front car, and that said John Jones was thrown out of said rear car and killed, and that he did nothing that contributed proximately to his death, then the jury must find for the plaintiff.'' (4.) "The court charges the jury that if they believe from the evidence that the plaintiff is entitled to recover in this cause, she is entitled to recover an amount equal to the present cost value or pecuniary value of John Jones' life to his family dependent on him during his expectancy of life.'' (5.) "The court charges the jury that if they believe from the evidence that John Jones at the time of his death, was in good health and of sober habits, and was 48 years of age, that his expectancy of life was as much as eighteen years.'' (6.) "If the jury believe from the evidence that the plaintiff is entitled to recover, she is entitled to recover an amount equal to John Jones' pecuniary worth to his family, who were dependent upon him from the time of his death to this time, added to the cash value of his pecuniary worth to his said family during the balance of his expectancy of life.'' (7.) "If there is a conflict in the evidence, then the jury may look to the opportunities and means of knowledge of the various witnesses in determining which of them they will believe.'' (8.) "If the jury believe from the evidence that Bill Scott was section boss, and that John Jones was one of the hands in the employ of said Bill Scott, and that said Bill Scott had control of the running of the two hand-cars spoken of by witnesses, and that while crossing the bridge over the Coosa river, in accordance with his orders at a great rate of speed, and that said hand-cars were running in about 15 or 20 feet apart, and that just after the two cars had crossed the iron part of the bridge, he gave a signal to the hands on the front car to check up, without first giving warning to those on the rear car, and if they further believe from the evidence that the time said Bill Scott gave a signal to those on the front car, Woods put his foot on

[Alabama Mineral Railroad Co. v. Jones, Admx.]

the brake and checked it up, and if they further believe from the evidence that the checking of the front car caused Guy to put his foot on the brakes of the second car, and that the handle of the lever was jerked out of John Jones' hands by the putting on of the brake by Guy, and that said rear car ran into the front car and threw John Jones to the ground and killed him, the jury must find for the plaintiff." (9.) "If the jury believe from the evidence that at the time John Jones was killed he was in the employ of the Alabama Mineral Railroad Company, and that said Bill Scott was the foreman or section boss, and that deceased was on a hand-car at the time of the accident, and if they further believe that said hand-cars were operated under the direction of said Bill Scott, and that said Bill Scott told the deceased and the other hands to go over the Coosa River bridge as fast as they could, and that in compliance with said orders the hands started across the bridge at a great rate of speed, and that they were running about 15 or 20 feet apart, and that just after they passed the iron part of the bridge the said Bill Scott waived his hand to those on the front car to slow up, and that John Woods at once placed his foot on the brake of the front car and checked it up, and if they further believe that Lee Benson as soon as John Woods put his foot on the brake, waived to the hindmost car to check up, and that Guy at once placed his foot on the brake, and if they further believe that the placing of Guy's foot on the brake suddenly checked the speed of the car, jerked the handle of the lever out of John Jones' hand; and if they further believe that before he could recover and get hold of the handle, the hindmost car ran into the front car, and threw John Jones off and he was killed, then the plaintiff is entitled to damages." (11.) "The jury may look to the opportunities of the witness for observing and knowing the facts which they may testify about in determining which witnesses they will believe." To the giving of each of these charges the defendant separately excepted, and also separately excepted to the court's refusal to give each of the following charges requested by it: (1.) "If the jury believe the evidence, they will find for the defendant." (2.) "If the jury believe from the evidence that said front car upon which said W. A. Scott was riding, was not stopped, or its

speed checked suddenly while crossing the Coosa River bridge without notifying those on the car behind of its intention to stop, then they must find for the defendant." (3.) "If the jury believe from the evidence that said cars were not run over said river at said time and at a great rate of speed, and that said front car was not stopped suddenly or its speed checked while both cars were going at a high rate of speed and without first ordering the hindmost car to stop, and without notifying those on the hindmost car of the intention to stop, then they must find for the defendant." (4.) "If the jury believe from the evidence that Scott before or at the time of checking the speed of the front car, notified those on the rear car to check their speed also, and gave them the usual and customary signal for that purpose, then they must find for the defendant." (5.) "The court charges the jury that it was not negligence in the said Scott to run two hand-cars at the same time in the manner in which these cars are shown to have been run across the Coosa River bridge, and if they further find from the evidence that said cars were following one another, and that said Scott who was in charge of both of said cars gave the signal for both to slow up at the the same time, that they must find for the defendant." (6.) "The court charges the jury that even if they believe from the evidence that John Jones was holding the handle and was thrown loose from the same by the sudden putting on of the brake by John Guy, that then they must find for the defendant." (7.) "If the jury believe from the evidence that the other section hands riding on the car with John Jones jerked the handle or lever in front and caused him to loose his hold of the handle, that then they must find for the defendant." (8.) "The court charges the jury that if the evidence leaves them in doubt as to what threw John Jones from said car, that then they must find for the defendant." (10.) "The court charges the jury that if they believe from the evidence that the said John Jones was riding along on said car, having only hold of the handle with one hand, that this was not the proper way for the said John Jones to ride, and they must find for the defendant." (12.) "The court charges the jury that they may look to the fact, if they find it to be a fact, that no one else fell off of said car, in connection with all the other

[Alabama Mineral Railroad Co. v. Jones, Admx.]

facts in the case in determining whether or not said Jones was grasping the handle in a manner to properly protect his own safety." (14.) "The court charges the jury, that it was not negligence to run said cars over said bridge at the rate of speed as shown by the evidence in this case." (15.) "The court charges the jury that there is no evidence that W. A. Scott gave any order or signal which required any one to put on the brake suddenly on either car." (18.) "The court charges the jury that if Scott was sitting in a position where his signal could be seen by those riding on the rear car, that then it was not negligence for him not to look back to ascertain whether the same had been seen or not." (19.) "The court charges the jury that if they believe from the evidence that Guy promptly obeyed the signal given by Scott, and that he saw it when Scott gave it, and applied the brake in the usual and customary manner, and that this was all the appliance for checking the speed of said cars, that then they must find for the defendant." (20.) "If the jury believe that John Woods put on the brake too suddenly, and in an improper manner, and checked the speed of said front car too rapidly, and that that caused the accident, then the plaintiff can not recover." (24.) "The court charges the jury that if they believe from the evidence that the signal was given by Scott for both hand-cars to check their speed at the same time, and that it was known by those on the rear car, and that Guy properly applied the brake in the usual and customary way, that then they must find for the defendant." (25.) "The court charges the jury that the plaintiff can only recover nominal damages, if she is entitled to recover at all." (26.) "If the jury believe from the evidence that the death of John Jones was caused by accident such as was naturally incident to his employment, then they must find for the defendant."

There was judgment for the plaintiff. The defendant appeals, and assigns as error the several rulings of the court to which exceptions were reserved.

THOS. G. JONES, for appellant.—1. The court plainly erred in allowing the answer to the question: "How many minor children did he have living with him and depending on him for their livelihood, at the time of his

death?'' and also in the ruling as to the ages of his children at the time of his death, and also whether all of these children were at home. Before the questions were asked, plaintiff had been allowed to prove that John Jones left a widow, and the children of their marriage, dependent on him at the time of his death, and what he was earning, and what he did with it towards the support of the widow and family, etc. This was the utmost limit to which plaintiff could go, to show dependency on the deceased, even under *James v. R. & D. R. R. Co.*, 92 Ala. 235. The questions objected to about the ages and minority of the children, and whether they were all at home, etc., shed no light upon any issues which the jury was to try. The plaintiff is suing for the entire value of the life, and for the benefit of all the distributees. The answers to the questions could serve no purpose except to introduce illegal elements of damages, or stir the passions and appeal to the sympathies of the jury. The admission of the evidence was prejudicial, and constitutes a reversible error.—*L. & N. R. R. Co. v. Binion,* 107 Ala. 645.

2. The court erred in not allowing the witness Scott, who was shown to be an expert, to answer the question ''Whether or not the danger of riding on the hand-car while in motion was obvious,'' etc. The question involved not merely what danger was obvious from a collision, or the running off of the hand-car, but also the dangers incident to the use, or the manner of propelling the car while it was in motion, and the liability of a man standing on the hand-car while in motion to be thrown therefrom. These were matters for expert opinion.—*Western Ins. Co. v. Tobin,* 32 Ohio St. 83; *Carpenter v. Transportion Co.,* 71 N. Y. 574; *Fenwick v. Bell,* 47 Eng. Com. 311; *Transportation Line v. Hope,* 95 U. S. 297; *McCreary v. Turk,* 29 Ala. 245.

3. The fourth charge given at the request of the appellee was inevitably misleading, and confused and bewildered the jury. There was no evidence other than the fact of Jones' age, habits and occupation as to what his expectancy of life was; but, that question out of the way, the charge left the jury to guess what was the ''present cost, value, or pecuniary value of John Jones' life to his family dependent upon him, during his expectancy of life.'' It did not restrict their verdict to

the amount his family received from his earnings, or give the jury any rule by which to ascertain that amount of the sum which, placed at a legal rate of interest, would produce during his expectation of life, the amount which his family would have received from his earnings.—*L. & N. R. R. Co. v. Trammell*, 93 Ala. 355 ; *James v. R. & D. R. R. Co.*, 92 Ala. 235.

4. The eighth charge requested by the defendant should have been given. The burden was on the plaintiff to make out her case as alleged. Cardwell's testimony authorized the jury to find that Jones did not grasp the handle at all as the car came over the bridge. *L. & N. R. R. Co. v. Binion*, 98 Ala. 570 ; *Bromley v. Bir. Min. R. R. Co.*, 95 Ala. 405 ; *Stager v. Ridge Ave. Pass. Co.*, 119 Pa. St. 70 ; *Sorenson v. Menasha Paper & Pulp Co.*, 56 Wis. 388.

5. The plaintiff's proof did not furnish sufficient data upon which to base anything more than nominal damages.—*L. & N. R. R. Co. v. Orr*, 91 Ala. 551 ; *L. & N. R. R. Co. v. Trammell*, 93 Ala. 355 ; *James v. R. & D. R. R. Co.*, 93 Ala. 231.

BROWNE & LEEPER and LONGSHORE & BEAVERS, *contra*. 1. There was no error in the court's allowing the number and ages of the decedent's children who were dependent upon him, because the evidence for plaintiff tended to show that deceased spent all his wages in the support of himself and family, who were living with him and dependent upon him. Therefore, the evidence called for by the questions tended to throw light on how much of his wages went to the support of his family, which of course depended in a large measure on the number of his family and their ages.—*Bromley v. Bir. Min. R. R. Co.*, 95 Ala. 397 ; *L. & N. R. R. Co. v. Trammell*, 93 Ala. 350.

2. There is no error in charge No. 4, given for plaintiff as insisted in appellant's twenty-third assignment of error. This charge simply states a well established rule of law that in such cases ''the measure of damages is an amount equal to the present cash value, or pecuniary value of deceased's life to his family dependent upon him during his expectancy of life.'' This is always what the law tries to arrive at in ascertaining the measuse of damages, and the only differences have been in

34

the manner of ascertaining it.—*L. & N. R. R. Co. v. Trammell*, 93 Ala. 350.

3. There is no error in charge No. 5, given for plaintiff, as insisted in appellant's twenty-fourth assignment of error. This charge, in fact, underestimated his expectancy, which was about twenty-two years. If he was in good health, and of sober habits, and forty-five years of age, his expectancy of life was "as much as eighteen years," as stated in said charge. The tables of mortality govern in such cases, and the expectancy of life, as shown by said tables, are matters of judicial knowledge and are properly given in charges to the jury. *McDonnell v. Ala. Gold Life Ins. Co.*, 85 Ala. 401; *K. C., M. & B. R. R. Co. v. Phillips*, 98 Ala. 159.

4. There was no error in charge No. 8 asked by defendant below, as insisted in appellant's thirty-seventh assignment of error. This charge reads: "If the evidence leaves them in doubt," etc. This does not correctly define the measure of proof. The jury might have serious doubts, but if the plaintiff had made out his case by a bare preponderance of the evidence, they, the jury, should find in his favor.—*Birmingham Un. R. Co. v. Hale*, 90 Ala. 8; *Harris v. Russell*, 93 Ala. 59.

5. There was no error in refusing charge No. 12 asked by defendant below, as insisted in appellant's thirty-ninth assignment of error. It singled out a fact and said that the jury could look to that fact in determining, etc. There is no better settled rule of law than that it is not error to refuse such charges.—*L. & N. R. R. Co. v. Hurt*, 101 Ala. 34.

HEAD, J.—The leading facts of this case may be found in the report of the former appeal (107 Ala. 400). New questions upon the admission of evidence, and very many instructions given and refused, are predicated for assignments of error on the present appeal.

The cause of action, as stated in the first count of the complaint, was that Scott, section foreman and superintendent of road repairs, in the exercise of such superintendence, negligently ordered and directed plaintiff's intestate and the other section hands to take the two lever cars over the river at once, and at a great rate of speed, and negligently stopped his car suddenly while it was in front of the other car, while both were going at a

high rate of speed, and without first ordering the rear car to stop, or notifying those on it of his intention to stop the car he was on, causing the rear car to run into the front car, whereby plaintiff's intestate was knocked off the rear car and killed.

That stated in the second count is, that Scott, the defendant's section foreman, in charge of the two lever cars, the one running closely behind the other, at a high rate of speed, negligently stopped the front car suddenly, without notifying those on the car behind, by reason of which the rear car ran into the front car, whereby plaintiff's intestate was knocked off the rear car and killed.

These allegations were put in issue by the general denial; and the defendant further defended upon a plea of contributory negligence on the part of the intestate, the gravemen of which was that he failed to grasp or hold to the lever or handle of the car on which he was riding (the rear car), as it was his duty to do, but stood at the rear end of the car, and was negligently looking up and down the river over which the cars were passing, or was looking backward without holding on to any part of the car, or the handle thereof, which was an unsafe and dangerous way of crossing said river and trestle on a moving hand-car. Issue was joined on this plea.

There was evidence tending to support both the complaint and pleas.

Smith Peoples, one of the section hands, on the car with the deceased, was permitted to testify that the place where the injury occurred—on the abutting trestle of a river bridge—was a dangerous place to stop. The defendant's objection to the question calling out the testimony, was, that it was illegal, and called for incompetent, inadmissible and illegal testimony. The question called for the statement of a collective fact, and answer to it is not reversible error.

The section foreman, expert in the operation of hand-cars, was asked by the defendant to state whether or not the danger of riding on one of the hand-cars, while in motion, is obvious and patent to a man—whether any man of common sense would know that to be dangerous? A general objection to the question was sustained. We think there was no error in this ruling. It is common knowledge that danger attends riding on a moving hand-car and that this danger is patent and obvious to a man

of common sense. If the witness had answered the question, affirmatively, the answer would have been declaratory merely of what the jury already knew.

There was no reversible error in allowing the question to be asked the foreman by the plaintiff: "Is it always necessary when four of the hands are on the lever car for all four hands to have hold of the handles, all the time, in order to propel the car at a safe rate of speed?" for the reason, if no other, that the answer of the witness was, "Yes, they should hold to it." The answer was favorable to the defendant.

Witness, Guy, one of the section hands, was asked by defendant, how a person operating the car should grasp the handle? The court sustained an objection to the question, but it is shown that the witness, immediately, without objection, explained fully how the handle should be grasped, rendering harmless the error, if any, in the court's ruling.

The evidence was circumstantial as to what proportion of the earnings of deceased were consumed in his own support, and hence what amount of pecuniary benefit the dependent next of kin enjoyed from such earnings. As a circumstance, aiding the solution of this question, it was competent to show how many and what dependents there were, and their ages. Particularly, in view of the cautionary instructions given the jury by the court, in reference to this proof, there was no error in the ruling. The authorities hereafter cited, touching the measure of damages, make a distinction between cases where the entire earnings are consumed in the support of the family and where a portion only is so consumed, leaving a surplus for accumulation, though it seems that in cases where there are dependent families, who are distributees, enjoying support from the earnings, and also surplus accumulations, the plaintiff, administrator, is not confined in his recovery to the amount of injury sustained by the loss of their support, but may recover the entire present value of the accumulations, as well. The present record raises no question calling for any further explanation of this distinction or how it operates, than is stated in *Trammell's Case*, 93 Ala. 350, which gives the dependent family annual benefits. The writer's own views are that under the statute, which gives the right of action to the administrator for

the benefit of all distributees alike, the measure of damages is the same in all cases, whether some or all of the distributees were dependent or not.

The court at the request of the plaintiff instructed the jury that if deceased was, at the time of his death, in good health and of sober habits, and was 48 years of age, his expectancy of life was as much as eighteen years. This charge was an invasion of the province of the jury. In assessing damages, in cases like this, it devolves upon the jury, upon consideration of all the circumstances bearing upon the subject, as disclosed by the evidence, to ascertain what the duration of the party's natural life would have been. There is no method of ascertaining it, as a positive fact. The period fixed, in any case, is necessarily an inference drawn from many conditions and circumstances. In the same case, different minds of equal intelligence, might reach different conclusions. The tables of mortality, computed upon the experience of life insurance companies, which, being of such universal recognition, courts will judically notice, are not conclusive that the life expectancy of any particular person, though in good health and of sober habits, should be declared to be the period they estimate. It may be stated as a fact generally known that in the system of insurance many conditions enter, as factors, in the determination of the hazards and duration of a person's life. Though good health and sober habits, at the time, prevail, there may be other physical infirmities creating extraordinary hazard; such, for instance, as heritable diseases in ancestors, undue relation of height to weight, and the like. Again, the occupation the party pursues is of weighty consideration—whether or not involving extraordinary risk and danger. These may all be matters of evidence before the jury, in a given case, and it is for that body to draw the proper inference as to the real duration of the party's natural life. In the present case, not only the age, good health and sober habits of the deceased were shown in evidence, but he was pursuing an occupation attended with unusual dangers. The charge was bad, in that it withdrew that fact from the consideration of the jury, as well as, because it made the court to draw the inference which it was alone the province of the jury to draw.

When the case was formerly before us, we held that

the two charges requested by the plaintiff and numbered 8 and 9 in the present record, ought to have been given. On the trial from which this appeal comes, a question was prominently raised by evidence and is now argued before us, whether or not the deceased, though he may have had hold of the lever or handle, held it with the firmness and care which was reasonably necessary to his safety. The plea, it will be remembered, on both trials, specially, made no complaint of the manner in which the lever was grasped. Its sole complaint was, that deceased did not grasp it at all, but stood at the rear end of the car and was negligently looking up and down the river, over which the cars were passing, or looking backward without holding on to any part of the car or the handle thereof; and there was a special replication, on which issue was joined, which alleged that he was holding to the handles of the car, and continued to so hold until he was knocked loose by the sudden putting on of the brake, &c., without saying anything as to the firmness or careful manner of the grasp. The charges referred to do not submit this question, as to the manner of the grasp, to the jury, but are so framed as to instruct, that legal requirements, on that point, were satisfied, if deceased had the handles of the lever in his hands. We will not now determine whether the plea and replication, and the evidence adduced on the last trial, legally raise the question. It may be that they do. It will be safer, on another trial, to so frame the instructions as to submit the question to the jury.

The foregoing remarks apply alike to charges 1 and 2 given for the plaintiff.

The measure of damages, in cases of this character, viz., where the next of kin were dependents and all earnings were consumed in the support of the family, will be understood by consulting the following authorities : L. & N. R. R. Co. v. Trammell, 93 Ala. 350 ; McAdory v. L. & N. R. R. Co., 94 Ala. 272 ; Bromley v. B. M. R. R. Co., 95 Ala. 397 ; L. & N. R. R. Co. v. Markee, 103 Ala. 160 ; A. G. S. R. R. Co. v. Hall, 105 Ala. 599. Charge 4 given for the plaintiff seems to come within the rule, except that it omits, in one of its alternatives, to confine the recovery to the *present* pecuniary value, &c. It authorizes the recovery of the "present cash value, or the pecuniary value," &c.

[Alabama Mineral Railroad Co. v. Jones, Admx.]

The defendant can not complain of the basis of computation authorized by charge 6, given for the plaintiff.

Though charges 7 and 11 given for plaintiff, might have been properly refused, there was no error in giving them.

Counsel do not insist, in argument, upon the error assigned upon the giving of charge 3 for the plaintiff. We notice, however, that the clause therein, "and that said John Jones was thrown out of said rear car and killed," should have inserted therein before the word, "thrown," the word "thereby," or some change made of similar effect.

The allegations of the first count of the complaint requires proof that the foreman, Scott, stopped his car suddenly while it was in front of the other car, while both cars were going at a high rate of speed, either without first ordering the rear car to stop; or without notifying those on it of his intention to stop the car he was on. Both these alternatives are not required to be proven. The second charge requested by the defendant requires proof of the second alternative, though the first might have been proven. It was properly refused. The third charge requires proof of both alternatives, and hence is bad.

If the defendant's fourth charge meets one of the above mentioned alternatives, it does not the other. Nor does it meet the averment of the second count. It was properly refused.

It was a question for the jury whether or not it was negligent for Scott to run two hand-cars at the same time in the manner in which these cars are shown to have been run across the bridge. The defendant's fifth charge was, therefore, properly refused.

If the injury was caused by the sudden putting on of the brake by John Guy, we cannot say, as a matter of law, that the act of Guy was negligent or wrongful and was not rendered reasonably necessary by the negligence of the foreman. That question was for the jury. The sixth charge was, therefore, properly refused. The same as to charge 7. Charge 8 states an incorrect measure of proof. Nor are we able to declare as matter of law, as charge 10 does, that it was negligent in deceased to have hold of the handle with one hand only. Charge 12 singles out a particular fact for the special attention

of the jury, which justified its refusal. Charges 14, 15 and 18 invaded the province of the jury.

Charge 19 ignores the question whether the order or signal given by the foreman, under all the circumstances, involved negligence on his part. So, charge 20 ignores the question whether the acts of John Woods therein stated were superinduced by a negligent order of the foreman.

We think it can not be stated, as a legal proposition, that if the foreman gave the signal for both the cars to check their speed at the same time, and that it was known by those on the rear car, and that Guy properly applied the brake in the usual and customary way, there was, necessarily, no negligence upon which a recovery for plaintiff might be based. Whether these facts, in view of other circumstances, involve sufficient notification to those on the rear car, of the intention to stop, within the meaning of the second count of the complaint, and whether there was no negligence in the fact of giving such a signal, under such circumstances, were for the jury to determine. Charge 24 was, therefore, properly refused.

Charges 25 and 26 as well as the general charge were obviously improper.

Reversed and remanded.