[Louisville & Nashville Railroad Company v. Banks, Admr.]

# Louisville & Nashville Railroad Company *v.* Banks, Adm'r.

*Action against Employer for Negligently Causing Death of Employe.*

[Decided Dec. 18th, 1901.]

1. *Judgment on demurrers; when insufficient.*—A recital in a minute entry that certain demurrers to certain pleadings were interposed and that "after consideration the court overruled said demurrers" (or "sustained" them, as the case may be,) is insufficient as a judgment to authorize a review of the court's ruling.

2. *Same; when demurrers treated as waived.*—Where a ruling on demurrers to a pleading appears only by a shorthand rendering, rather than by a judgment entry in proper form, the demurrers must be treated as waived.

3. *Pleading, ruling on; when error without injury.*—Where all the matters set up in certain replications were fully gone over in the evidence, rulings sustaining demurrers to such replications need not be noticed on appeal.

4. *Negligence after discovery of peril.*—A replication averring that an engineer, after discovering the peril of plaintff's intestate, failed to reverse the engine, sand the track and apply the brakes, etc., treats of simple negligence only.

5. *Wantonness, what constitutes.*—To constitute wantonness in inflicting an injury it is not essential that defendant's employes have an intent to injure; it is enough if they exhibit such wantonness and recklessness as to probable consequences as implies a willingness to inflict injury, or an indifference as to whether injury is inflicted.

6. *Same.*—To the implication of wantonness or willfulness it is essential that the act done or omitted should be done or omitted with a knowledge and present consciousness that the injury will probably result; which consciousness is not to be implied from mere knowledge of the elements of a dangerous situation.

7. *Wantonness; when averment of insufficient.*—A count "is lacking in necessary averment to charge wantonness" and

"charges no more than simple negligence," which claims damages "for the wrongful and negligent killing" of plaintiff's intestate, by his being "negligently run against and killed" by defendant's engine, at a point in a city, "where were many paths frequently and continuously used by defendant's employes and others in passing and repassing thereon, and where defendant's employes were accustomed to resort in large numbers at all times. of the day, and where their duties required them to resort," and which alleges, further, "that all these facts were well known to defendant's employes on said engine, and knowing the danger to such persons, and in utter disregard and indifference to their safety, said engineer recklessly and wantonly propelled said engine and tender backward, without anyone standing on the foot-board in the rear of said tender," causing the injuries complained of.

8. *Same.*—A count is lacking in necessary averment to charge wantonness and charge simple negligence only, which claims damages "for the wrongful and negligent killing" of plaintiff's intestate, alleging that the engineer "negligently failed to use, as quickly as he might have done, the appliances at hand for stopping said engine after discovering said" intestate "in imminent peril immediately in front of said backward moving engine. And the failure to make immediate and instantaneous use of the appliances at hand to stop the engine was wanton and reckless on the part of said engineer, who was at the time fully conscious of such failure and of the probable results."

9. *Same.*—A count is lacking in necessary averment to charge wantonness and charges simple negligence only, which claims damages "for the negligent killing" of plaintiff's intestate by a switch engine in charge of defendant's engineer, and avers "that said engine was wantonly and recklessly propelled backward against said" intestate, "at the rate of 15 or 18 miles per hour, within the corporate limits of" a certain town, "without blowing the whistle or ringing the bell and without any person on the foot-board, or rear of the tender of said engine, and in violation of an ordinance of said town, prohibiting the backing of engines at a greater rate of speed than four miles an hour, and at a place where defendant's employes were accustomed to be, and to cross in the discharge of their duties."

10. *Negligence after discovery of peril; when question for the jury.*—Where there was evidence tending to show that de-

[Louisville & Nashville Railroad Company v. Banks, Admr.]

ceased, an employe, was kiled on defendant's track, and that the engineer could, with the appliances at hand, have stopped his engine within fifteen inches or two feet, and failed to do so, but ran on sixty or more feet, and deceased, after falling or being knocked under the tender, was rolled or dragged that distance and thereby killed, and that his death was not caused by being knocked under the tender, the question, whether defendant's employe in charge of the engine was negligent after discovery of intestate's peril, was for the jury.

11. *Trial; error without injury in sustaining objection to question.* Error, if any, in sustaining an objection to a question is cured where it appears that the witness subsequently testified to the matters sought to be elicited by the question.

12. *Trial; error without injury in sustaining objection to question.* Where a witness answers a question, to which an objection has been sustained, the sustaining of such objection (if error) is without injury.

13. *Rules; when inadmissible in evidence.*—A rule of the master or, employer, not counted on in the complaint nor applicable to the facts of the case on trial, is not admissible in evi, dence.

14. *Evidence of private intention or motive; wantonness.*—It is not permissible to ask a witness whether or not his engine "was wantonly or recklessly propelled," as the queston calls for the private intention or motives of the witness.

15. *Hypothetical question, not based on facts of case; review.*—It is not error to refuse to allow a hypothetical question about matters not shown by the evidence.

16. *Evidence of uncommunicated belief.*—In an action for damages for alleged negligence of an engineer, it is not permissible to ask the engineer, on his examination, if he had any reason to believe that the injured employe was going to step on the track.

17. *Evidence as to cause of injury; relevancy.*—Where it is claimed for plaintiff that his intestate was knocked down by the tender and dragged under it for some distance, it is proper to ask a witness whether there is anything under a tender ordinarily to cause serious injuries.

18. *Hypothetical question, when proper.*—A witness may be asked a hypothetical question about a fact which is relevant under the pleadings, and where there is evidence tending to show the facts hypothesized.

19. *Objection to evidence; assignment of errors.*—Where an objection is made to an answer as a whole, the party objecting cannot assign as error a part only of the answer.

[Louisville & Nashville Railroad Company v. Banks, Admr.]

20. *Ordinance; when introduction of not reversible error.*—Where the evidence was in confusion as to whether the injury complained of occurred in D. or N. D., error, if any, in the introduction of an ordinance of the town of N. D., regulating the rate of speed of trains or engines therein, is eliminated by a charge of the court to the effect that, if the jury should find that the injury occurred in D., the ordinance had nothing to do with the case and should not be regarded in their deliberations.

21. *Employer and employe; damages; size of deceased's family.* In an action by the administrator of a deceased employe against his employer to recover damages for negligently causing his death, evidence as to the size of deceased's family is admissible.

22. *Objection to evidence; when not considered.*—A party objecting to a question is required to state the grounds of his objection.

23. *Objection to question; answer not injurious.*—Where objection to a question is overruled, and the answer is favorable to the party objecting, the error, if any, in overruling the objection will not cause a reversal of the judgment.

24. *Charge as to negligence; when erroneous.*—Where a recovery was sought on the ground of the negligence of an engineer, a charge for plaintiff is error which authorizes the jury to find for the plaintiff if they believe from the evidence that the engineer was negligent in certain respects therein stated, but fails to postulate that the said negligence produced the injury.

25. *Charge as to contributory negligence of switchman; when misleading.*—Where all the evidence shows that a switchman, who was killed by an engine and tender, saw the approaching engine and tender when he went on the track, and knew as well as the engineer did whether there was a switchman there or not, a charge is misleading and erroneous which instructs the jury that the deceased "had a right to presume that the engineer would obey the rules of the company."

APPEAL from Morgan Circuit Court.

Tried before Hon. H. C. SPEAKE.

The action was brought by John T. Banks as administrator of the estate of Joe Lawrence, deceased, against the Louisville & Nashville Railroad Company to recover damages for the alleged negligent killing of plain-

tiff's intestate, an employe, who was run against and killed by an engine operated on defendant's road and in charge of engineer, Ben McDermott.

Counts 8, 10, 11 and 12 of the complaint were, in substance, as follows: *"Count* 8: "Plaintiff claims of the defendant the sum of twenty thousand dollars as damages for the wrongful and negligent killing by defendant of plaintiff's intestate, Joe Lawrence, in defendant's yard in New Decatur, Ala., on or about March 2nd, 1898. And plaintiff avers that said Joe Lawrence was foreman or 'boss' of a switch crew in said yard and while in the discharge of his duties was negligently run against and killed, by an engine and tender of defendant in charge and under the control of Ben McDermott, an engineer in defendant's employ, to plaintiff's damage as aforesaid; and plaintiff avers that said injury, occasioning the death of said Joe Lawrence, occurred at a place in Decatur, or New Decatur, Ala., near the line between the said two towns, where were many paths frequently and continuously used by defendant's employes and others in passing and repassing thereon. Said locality was near the cotton compress, and very near the gas works, and within two hundred feet of the yard and telegraph office of defendant. where trains and engines were stopped, and where defendant's employes were accustomed to resort in large numbers and at all times of the day, and where their duties required them to resort, and all of these facts were well known to plaintiff's (defendant's?) employes on said engine, and knowing the danger to such persons and in utter disregard and indifference to their safety said engineer recklessly and wantonly propelled said engine and tender backward, without anyone standing on the footboard in the rear of said tender, and thereby caused the death of said Joe Lawrence, to plaintiff's damage as aforesaid." *Count 10* claims damages "for the wrongful and negligent killing of plaintiff's intestate," etc., "by a locomotive and tender operated by Ben McDermott, one of defendant's engineers, who, on, to-wit, March 2nd, 1898, negligently failed to use as quickly as he might have the appliances at hand for stopping said engine,

after he had discovered said Lawrence in imminent peril immediately in front of said backward moving engine, and by reason of said McDermott's failure to avail himself of such instrumentalities as early as he might have done, the said Lawrence, after being thrown down, was dragged and rolled along under the tender until he received injuries that speedily proved fatal. And the failure to make immediate and instantaneous use of the appliances at hand to stop the engine was wanton and reckless on the part of said engineer, who was at the time fully conscious of such failure and of its probable results." *Count 11* claims damages "for the negligent killing" of plaintiff's intestate by an engine, etc. It then alleges "And plaintiff avers that said engine was wantonly and recklessly propelled backward against said Lawrence, at the rate of six miles per hour, within the corporate limits of the town of New Decatur, Ala., without blowing the whistle or ringing the bell and without any person on the foot-board or rear of the tender of said engine, and in violation of an ordinance of the town of New Decatur prohibiting the backing of engines at greater rate of speed than four miles per hour, and at a place where defendant's employes were accustomed to be and to cross in the discharge of their duties."

*Count 12* was similar to count 11 except that it alleged the rate of speed at 15 or 18 miles an hour.

The defendant pleaded the general issue and by special plea set up the contributory negligence of the plaintiff's intestate, and the cause was tried upon issue joined on these pleas.

Under the opinion on the present appeal it is not necessary for an understanding that the facts of the case should be set out in detail..

Upon the examination of Dr. Murray, who had testified that he was a physician and surgeon of ten years' experience, that he was called to see Joe Lawrence after the accident and found him in a dying condition; that there was an abrasion on his head near the right eye; that he did not examine the body, as he was in a dying condition and he did not wish to disturb him. The

witness further testified that "Lawrence's forehead was bruised and had a scraped appearance. If he had been struck by a sloping tender of the engine, running six miles an hour, I don't think a blow of that kind would have caused the injury he received." Upon being asked if he had been dragged sixty feet would such an injury have been caused, the witness answered that simply dragging would not have caused the injury unless Lawrence had been compressed. During the further examination of the witness he was asked the following question: "I will ask you to state if a man of Joe Lawrence's size had been run against with an engine and knocked down, or fell down, and dragged along by a foot-board six inches from the ground and got behind that foot-board, and had been dragged, if that sort of treatment would have caused this sort of injury?" The defendant objected to this question, because there was no proof of its being the manner in which the injury was received, and because it was immaterial and irrelevant. The court overruled the objection, and the defendant duly excepted.

The court, at the request of the plaintiff, gave to the jury, among others, the following written charges, to the giving of each of which the defendant separately excepted: (C.) "If you believe from the evidence that Ben McDermott, after he saw the peril of Lawrence, if he so saw it, listlessly and inadvertently and negligently failed to resort to the proper use of all preventive means at his command to save Lawrence from injury, you must find for the plaintiff, unless you further find that Lawrence, after he became conscious of his danger, was not free from negligence in attempting to save himself from injury." (H.) "Lawrence had a right to presume that McDermott would obey the rules of the company."

There were verdict and judgment for the plaintiff, assessing his damages at $5,740.

The judgment entry in regard to the rulings on demurrers to pleadings merely recited that the demurrers were interposed, and that "after consideration the court overruled said demurrers" (or "sustained" them, as the case might be).

The defendant appeals.

[Louisville & Nashville Railroad Company v. Banks, Admr.]

THOS. G. & CHAS. P. JONES and J. M. FALKNER, for appellant. No brief came to the Reporter's hands.

E. W. GODBEY and W. W. CALLAHAN, for appellee, cited in support of charge C, *L. & N. R. R. Co. v. Brown,* 25 So. Rep. 611. And in support of charge H, they cited *B. M. R. R. Co. v. Jacobs,* 101 Ala. 149; *L. & N. R. R. Co. v. Bouldin,* 25 So. Rep. 903.

HARALSON, J.—1. The case though simple as to the real facts, is distressingly cumbered with pleadings, covering some 55 pages of the transcript. Nearly everything attempted was demurred to on both sides, and after all, there was no judgment on any of the demurrers to the counts of the complaint, to the pleas or replications. We have a case presented, therefore, where we must ascertain on what definite issues it was really tried.

2. The real facts stated concisely are, that Lawrence, the deceased, was an employe in the defendant's yard at Decatur or New Decatur, whose business it was to make up trains; that one Ben McDermott was the engineer in charge of the engine and tender which ran against deceased; that there were in the yard, the main track and some seven other side or switch tracks on the west side of the main track; that deceased was standing a very few feet on the east of the main track, with a switch list in his hand, at the time McDermott was coming south down the main line with his engine and tender attached, the tender running foremost, moving at the rate of some six miles an hour, and that deceased, —as McDermott testified,—when the tender was in three or four feet of him, made a movement from the place at which he was standing, which was a safe one, toward the track down which the engine and tender were coming, and ran and jumped on the track; was knocked down or fell, was caught under the tender and rolled some distance down the track. When taken out, as other evidence shows, he was so badly injured, he died soon afterwards.

The theory of the complaint is, that the death was not caused by knocking deceased down, for as contended, his death was not caused by that act, but came from his afterwards being rolled over or pushed along the track by the moving tender; that the engineer discovered his peril but failed to reverse his engine, sand the track and apply the brakes soon enough before deceased was knocked down but not killed, and by reason of such failure, and a failure to use preventive means afterwards, the deceased was dragged and fatally injured.

The complaint set out in variant forms in many counts, the negligence of the defendant's engineer, in his failure to do and observe this, that and the other alleged duty, whereby the injury resulted; and the pleas, in extended form, set up the negligence of the deceased in leaving a place of safety and going upon the main track in the face of peril to his life, in consequence of which he contributed proximately to his own destruction.

The plaintiff, first denying the allegations of these pleas, replied specially: (2nd) "After said deceased was by those on the engine observed on the track, those in charge of the engine, failed to use all proper means to stop the engine, and by reason of such failure, the said Joe Lawrence met his death." The third, fourth and fifth replications to the pleas were demurred to, and as appears by a shorthand rendering, these demurrers were sustained. The demurrers must, therefore, be treated as waived. As to these replications it may be said they were of no significance in the trial of the cause and no notice of them may be here taken, since all the matters set up in them were fully gone over in the evidence introduced.

The sixth replication, upon which much stress is laid, was that "The said engineer after discovering the peril of said Lawrence, failed to reverse the engine, sand the track and apply the brakes until the said Lawrence was knocked down but not killed, and by reason of such failure, the said Lawrence was dragged and fatally injured." These two replications (the second and sixth) treat of no more than simple negligence.

The defendant, joining issue on the second replication, rejoined specially to the sixth, "that when plaintiff's intestate stepped upon the track, and between the rails of the track on which said engine was, said engine was so close to said Lawrence that defendant's engineer could not stop the same by any appliances within his power in time to avoid hitting said Lawrence." The plaintiff moved to strike this last rejoinder, which was granted, but the ruling is shown only in the judgment entry and not in the bill of exceptions, and there is no formal judgment rendered, as shown, on the motion.

The 8th, 10th, 11th and 12th counts in the complaint were framed to set up wantonness on the part of the engineer in causing the death of the plaintiff's intestate. They were demurred to on many grounds questioning their sufficiency, but as no judgment was rendered on the demurrers, they must be treated as waived. We have, then, several counts setting up simple negligence, and these four, intended to set up wantonness on the part of the engineer in inflicting the injury on deceased. We have heretofore attempted to make plain the necessary averments of wantonness or willfulness, or reckless indifference to probable consequences, with a knowledge and present consciousness that the injury would probably result. In *A. G. S. R. R. Co. v. Burgess*, 119 Ala. 563, we said: "Of course, an intent to injure on the part of defendant's employe is not essential to liability, notwithstanding contributory negligence. It is enough if they exhibit such wantonness and recklessness as to probable consequences as implies a willingness to inflict injury, or an indifference as to whether injury is inflicted, though they may not have any such affirmative purpose."—*B. R. & E. Co. v. Pinckard*, 124 Ala. 372. Again, to make the matter plainer, if possible, it was said in the late case of *L. & N. R. R. Co. v. Brown*, 121 Ala. 226: "To the implication of willfulness, or wantonness, or reckless indifference to probable consequences, it is essential that the act done or omitted should be done or omitted with a knowledge and a present consciousness that the injury would probably result; and that this consciousness

is not to be implied from mere knowledge of the elements of the dangerous situation, for this the party charged may have and yet act only negligently and inadvertently in respect of the peril, but it must be alleged, either in terms, that he willfully, or wantonly, or with reckless indifference failed to discharge the duty resting upon him, or that he was at the time conscious that his course would probably result in disaster." When tested by these rules, the counts referred to were lacking in necessary averments to charge wantonness, willfulness, or reckless indifference to consequences, such as under the rules above stated amount to and are the equivalent of wantonness or willfulness. They charge no more than simple negligence.

The case must be here considered on the counts in the complaint charging simple negligence and the general issue thereon; upon the pleas of contributory negligence and issue thereon, or rather, as narrowed from these, on issue joined on the second special replication above, and on issue joined on the rejoinder to the sixth special replication, each as set out above.

3. There were but two witnesses who saw Lawrence at the time he was stricken by the engine's tender. The first of these, examined by the plaintiff, was McDermott, the engineer in charge of the engine at the time, who testified that he had been south that morning with a sanitary train and had returned to the yard office, and was on his way to the yard to get breakfast and leave his engine; that Lawrence passed the engine going south, and stopped on the east side of the main track, and about three or four feet from its east rail with his face towards the west; that he had a switch list in his hand looking down at it; that the engine was running, as he passed down with the tender in front, about six miles an hour, and his bell was ringing; he was in his place on the east side of the cab, leaning out of the window on his left arm with his right hand on the throttle,—used to shut off and open steam; it was daylight, about 6:30 o'clock A. M. and there was nothing obstructing his view; no one was on the east side of the track except Lawrence, who was then about

one hundred and seventy-five feet below the office. The witness, to use his own language, stated: "I got within three or four feet of Mr. Lawrence, when he made a movement towards the track. Until that time he was standing in a place of safety, and had he stayed there, he would have been in no danger. He was looking at his switch card. He ran and jumped right on the track. I blew the whistle, shut off steam and reversed the engine. It was not possible for me, with the appliances at my command, to have stopped that engine from the time that he stepped upon the track until the train came in contact with him. It could not have been stopped before that time. I did everything in my power to avoid coming in contact with him, after I saw him step upon the track. There was no appliance, contrivance or equipment which could have been used by me that was not used, that would have avoided coming in contact with him, after I saw him step upon the track. At the speed at which I was going, that engine was stopped as soon as it could have been stopped by the use of the appliances at my command. On this occasion there were not numbers of employes of defendant frequenting those tracks, or about the track where my engine was. There was no one else there but Lawrence that I saw. I had a good view of the track and could see a quarter of a mile off. Immediately after discovering Lawrence's peril, there was nothing that could have been done by me that was not done, that would have stopped the engine sooner or avoided coming in contact with him. As I was approaching the place where Lawrence was, he did not look up, but kept his head down looking at the paper. I did not fail to resort to the instrumentalities at my command, as early as I could, and was not conscious of failing to do so. When he stepped on the track, I shut off steam, applied the brakes, blew the whistle and reversed the engine. I did it as quickly as it could be done. * * * I ran about 60 feet after I discovered him on the track. I struck him that quick [snapping fingers] * * * I had no knowledge or notice that Lawrence was going to step on the track, before I saw him do

so. * *. * The first knowledge or intimation I had of it was, when he suddenly looked up from his book and started across. This was the first knowledge I had of it. * * * Lawrence had no duty to perform that required him to get upon the foot-board of my engine (tender)." It is not pretended the engine was not well equipped.

The only other eye-witness to the accident was E. M. Story, an employe of the defendant who worked in the shops, examined by defendant, whose evidence is not in conflict with that of plaintiff's witness, Mc-Dermott. He testified: "I was on my way to the shops walking through the yard between the main track and track No. 1 (the first on the west of the main track). When I passed the telegraph office, McDermott's engine was standing by the office. I went about 200 feet I suppose, before I stopped. I heard a whistle. I do not recall about the bell, but I heard the alarm whistle, and turned to look back to see if I was clear myself. I was somewhere between seventy-five and a hundred feet from the engine, when I looked back. I saw a man right in front of the engine, making a scramble for the foot-board, or something of the kind. His foot struck the foot-board, but he slipped and fell and rolled under. I don' tknow what his head struck when he rolled under. I do not know that his head struck anything. The foot-board ran up over him when he fell, and he went under the foot-board. I don't know whether his head struck the rail or not. I don't think his hand ever grasped the grab rail, but he was grabbing at it. [There was a hand rail extending around the tender.] His foot struck the foot-board, but it slipped. There might have been sleet on the foot-board, as it had been raining a little and was very cold. * * * The engine was moving backward, the tender in front, and he attempted to grab the handhold, but I don't think he ever grasped it. His foot slipped and he went down in front of the engine. My attention was attracted by the alarm whistle, and I looked around to see if I was clear myself. When I saw the man he was right in the middle of the track, right in front of the engine, between the rails. Just as I turned

my head, he made a scramble for the foot-board and slipped. He was right at the engine in the middle of the track. His right foot hit the foot-board. He tried to grab the hand rail. It was all done at once. He was struggling for a foothold and a handhold. I was almost in front of him, and he was on the track and I was between the tracks. He had a lantern on his arm. It seems to me he had a paper in his other hand, but I could not say for certain. * * * When he missed his handhold and fell, his head fell east, and he was rolled under the foot-board. I don't know how high the foot-board was from the rail,—some six inches I reckon. * * * When I heard the signal and saw the struggle, the engine was not a hundred feet from Oakley's office. * * * When I looked around the engine was of course where they picked him up. * * * They stopped as soon as they could. * * * He fell on the foot-board."

M. D. Watts, another engineer, of twenty years' experience, examined by defendant, testified that if a light engine, such as this one was, were going at the rate of six miles an hour, and a man should suddenly spring on the track, about three or four feet in front of the engine, and the engineer should be looking out of the cab window and see him, when he made the motion for getting on the track, and using all the appliances in his power, the engine would run seventy-five or eighty, possibly between eighty and a hundred feet before it could be stopped.

J. A. Curlee, an engineer, examined by plaintiff, testified that when one is in as close proximity to a moving engine as Lawrence was shown to be, the necessary steps to be taken by the engineer would be to reverse the engine, cut off steam and apply the brakes, which would require both hands, and that sand is used in cases of emergency, when he desires to make a quick stop; that six miles an hour is going very slow, and by the use of these appliances, he ought to stop in fifteen inches or two feet.

The evidence of these two engineers, so much in conflict, is pertinent, as tending to show negligence or the

want of it on the part of the engineer in failing to stop his engine after discovering the peril of the deceased; and it was a matter for the jury to determine, under all the evidence, whether the engineer was guilty of negligence.

4. It is manifest, under all the evidence, if the engineer, according to his testimony and that of said M. D. Watts, could not have stopped his engine short of the time and place it was stopped, that he was not guilty of negligence. But, if, on the other hand, according to the testimony of J. A. Curlee, the engineer could, with the appliances at hand, have stopped his engine within fifteen inches or two feet, and he failed to do so, but ran on some sixty or more feet, and deceased after falling or being knocked under the tender, was rolled and dragged that distance and thereby killed, as the evidence tends to show, and his death was not caused by falling or being knocked under the tender, as the evidence might authorize them to infer, then, it would be for the jury to determine from this evidence, and all the evidence in the case, whether the defendant's employe was guilty of negligence after becoming aware of the peril of the intestate, and the general charge could not properly have been given for defendant.

5. Conceding that there was error in not allowing the witness, McDermott, to answer the following question propounded to him on the cross by defendant: "At the time [of the injury to deceased] had not your crew been relieved to go to breakfast?"—still, it was error without injury, since the witness afterwards testified, "My crew was relieved, except Frazier [who was fireman] and myself at 6:15."

6. The witness was also asked by the defendant: "At the time you were going to the shops [which were on the south] with the engine for the purpose of getting breakfast, was any switchman required to be on the footboard?" The plaintiff objected for the reason that there is a rule to that effect, and the rule was the best evidence. The witness, however, answered that no rule of the company required him to have a switchman on the foot-board of the tender. There was no injury here to defendant.

7. The plaintiff offered in evidence rules 104 and 104 *a*, of the company,—the first one being,—"When a train is being pushed by an engine (except when shifting and making up trains in yards) a flagman must be stationed in a conspicuous position on the front of the leading car, so as to perceive the first sign of danger, and immediately signal the engineer;" and the other, "The proper position for at least one switchman when riding on a light engine in the yard, is on front of the engine in the direction of its moving." The motion for the exclusion of these rules was based on the objection to each, that it was irrelevant and immaterial. It is manifest that rule 104, not counted on specially in the complaint, has no application to a light engine moving in the yard of the defendant as this one was doing at the time, and the objection by defendant to its introduction in evidence should have been sustained. But rule 104 *a* does apply to such engine under the circumstances shown, and as the disobedience of that rule was counted on in the complaint, it was admissible in evidence and the motion to exclude it was properly overruled.

8. The question propounded to the witness, McDermott, the engineer,—"Whether or not your engine was wantonly or recklessly propelled against said Lawrence," was properly disallowed, even if wantonness or recklessness had been charged. In such a case, he could not properly have been interrogated as to his private intentions or motives in operating his engine, but merely as to facts tending to show his motives.

9. There was no evidence that Lawrence stepped upon the foot-board of the tender, and there was no error, therefore, in refusing to allow the defendant to ask the witness, "If a switchman had been upon the footboard of that train, if his presence could have prevented Lawrence from stepping upon the foot-board?"

10. Nor was there error in refusing to allow said witness to answer the next question: "If a switchman had been standing upon that foot-board at the time, would the presence of the switchman there, have prevented the engine from coming in contact with Law-

rence?" It calls for a conclusion of the witness, and the effect, without more, of the bare presence of the switchman on the board.

11. This witness was further asked if he had any reason to believe that Lawrence was going to step upon the track. Waiving the objection that the question called for the mere uncommunicated belief of the witness, he had just stated, "I had no knowledge or notice that Lawrence was going to step upon the track before I saw him do so." He had also stated that when he got within three or four feet of Lawrence, he made a movement toward the track. "Until that time he was standing in a place of safety, and had he stayed there, he would have been in no danger. He was looking at his switch card. He ran and jumped right on the track." Moreover, the witness in seeming disregard of the ruling, immediately thereafter stated,—"The first knowledge or intimation I had of it was when he suddenly looked up from the book and started across. This was the first knowledge I had of it." The ruling was not improper.

12. The witness, Curlee, for the plaintiff, shown to be an expert engineer, was asked, "If a man thus struck and knocked down, is dragged, say, 50 feet,—is there anything under the tender, ordinarily, to cause serious and fatal injuries?" He replied, "The brake-beam would." Defendant objected to the question when asked, and afterwards moved to exclude the answer, on the ground, in substance, that it was not shown that the construction of engines are all alike and the construction of this particular engine is not inquired into. The evidence tended to show that the fatal injury was not inflicted by the mere collision with the tender. It tended to show that the engine had a brake-beam. The question did not seek to show that the engine was of improper construction. It was not improper to inquire, if ordinarily there is anything under a tender to cause serious injuries; and if there was no brake-beam under the tender, that fact might easily have been called out by defendant on the cross.—*Blackman v. Collier*, 65 Ala. 312.

13. The objection to the hypothetical question propounded by plaintiff to Dr. Murray, on page 91 of transcript, was untenable. There was evidence tending to show the facts hypothesized, and under the pleadings the fact was relevant.—*Black v. Milwaukee St. R. Co.*, 27 L. R. A. 365; *Montgomery v. L. I. R. Co.*, 55 Hun. 611, and other cases cited on brief of counsel for plaintiff.

14. The defendant on the cross-examination of plaintiff's witness, Frazier, sought to show that McDermott's engine which struck Lawrence, made sufficient noise for Lawrence to have heard it, at the time he got in its way and was killed, and he was, therefore, inexcusable for getting in its way in the manner he did. McDermott testified that there were other engines switching along there, about that time, and bells were ringing and whistles were blowing in the vicinity. Lawrence's duty, as shown, was to make up trains, and he had his engine for the purpose. On the re-direct examination of Frazier, to rebut defendant's evidence, thus brought out by Frazier, Frazier stated "that he did not know that a train was being made up on the west track, but they were switching cars. This made some noise, an ordinary noise. Lawrence's switch engine would puff up to a car and then puff away again; he did not know thatthe bell was ringing; that Lawrence's switch engine was about as heavy as our engine, (both about the same size and capacity)." The defendant objected to this answer because irrelevant and immaterial, and assigns as error, that part of the answer placed in parentheses. Its objection went to the whole answer, and not to that part of it parenthesized. It did not object to that portion separately, and it cannot be allowed to assign as error that to which it did not object, nor anything less than that to which it did object.

15. The evidence is somewhat in confusion as to where the line between New Decatur and Decatur runs, but its tendency was most strongly to show that the injury occurred north of this line, and not within the corporate limits of New Decatur. The plaintiff was allowed to introduce, against the objection of defendant,

ordinance 39 of New Decatur, which forbade the running of a train at a greater rate of speed than four miles an hour. Preston, an engineer, surveyed the line, and stated that the line between the two corporations was 254 feet south of the center of Oakley's office. All error, however, in the introduction of this ordinance, if any existed, was afterwards eliminated by the court, in charge 58, given to the jury, which instructed them that if they believed the evidence, this boundary line of New Decatur commences 254 feet below the center of Oakley's office, and that if the engine struck Lawrence north of that line, then the ordinance introduced had nothing whatever to do with the case, and they should not regard it in their deliberations.

16. There was error in allowing Mrs. Lawrence, the widow of deceased, to testify that the size of deceased's family was herself and a child.—*Ala. M. R. R. Co. v. Jones, Admx.,* 114 Ala. 519; s. c. 121 Ala. 113.

17. Frazier, testifying for defendant, was asked by plaintiff, on the cross, about a caution board, that had written on it the words, "Keep off the track." He was further asked, "Was that written there for the employes or others?" Defendant objected, but on what ground is not stated. The witness replied, "I suppose for any one." If it were conceded that the question was improper, the objector should have stated the ground of objection, and, at any rate, the answer was not injurious to defendant.

18. Charge given for the plaintiff indicated by the letter C. was erroneous, in that it fails to postulate that the negligence of the engineer therein hypothesized, produced the injury complained of. The negligence therein hypothesized, if true, may not have caused the death of deceased.

The manifest tendency of charge H. given for plaintiff was to mislead the jury to the erroneous conclusion that Lawrence had the right to presume that there was a switchman on the foot-board of the tender, and for that reason he was guilty of no negligence in going on the track, and this, when all the evidence shows he saw the approaching engine and tender when he went

upon the track, and knew as well as the engineer did, whether there was a switchman there or not. The charge should not have been given. We discover no reversible error in the other charges given for plaintiff.

19.　The defendant requested a great number of charges, about forty of which were given, and nearly an equal number refused. Those given seem to cover every phase of the case, and were quite as favorable, if not more so, than could have been demanded. We do not desire to go to the great and unnecessary length of reviewing each of these refused charges. They have been considered and we find no reversible error in them. Having reference to the pleadings and evidence, it is sufficient to say of them, that they are either misleading, argumentative, abstract or positively erroneous.

For the errors in the admission of rule 104 and the giving of the two charges C. and H. for plaintiff, the judgment of the court is reversed and the cause remanded.

Reversed and remanded.