# Ala. Great Southern Ry. Co. *v.* Guest, as Admr.

### Action for Damages for Death of Intestate.

[DECIDED DEC. 21, 1905, 39 So. REP. 654.]

1. *Trial; Instructions; Misleading Charges.*—It is not reversible error to give charges misleading in tendency, as it is always open to the other party to request instructions explanatory thereof.

2. *Same.*—In an action for the death of one run over by a railroad train, where one count therein did not allege a high rate of speed of the train at the time deceased was struck, except inferentially, and there was conflict in the evidence as to the rate of speed, it is proper to refuse to instruct that verdict cannot be rendered on such count for plaintiff unless the jury believe the cars were being run at a high and dangerous rate of speed at time deceased was struck.

3. *Same; Argumentative Instruction; Formal Defects.*—Charges which are argumentative are properly refused; so also are charges which are formally defective.

4. *Negligence; Wanton Negligence; Definition.*—An instruction that to constitute wanton negligence, an act done or omitted must have been done or omitted with the present knowledge that injury would probably result, is correct.

5. *Evidence; Rebuttal.*—The defendant introduced a showing of a witness which tendered an issue of suicide, and the plaintiff had a right to offer evidence in rebuttal of the issue so tendered.

6 *Railroads; Injury to Persons on Track; Evidence.*—Where the charge was that plaintiff's intestate was wantonly killed at a railroad crossing by defendant's train of cars, it was competent for the plaintiff to show the conditions as to the frequency and number· of persons passing along defendant's track at the time and place in question.

7 *Railroads; Persons on Track; Trespasses; Duty not to Kill.* The duty not to wantonly, willfully or intentionally kill or

injure a trespasser on a railroad track, in the operation of the engines or cars thereon, is just as imperative as not to so injure one rightfully on such track; in such cases the law makes no possible distinction.

APPEAL from DeKalb Circuit Court.

Heard before Hon. J. A. BILBRO.

This was an action by Guest as the administrator of the estate of Dean for damages for the death of Dean alleged to have been caused by the negligence of defendant's servants. The issues were joined on counts 2, 3, 6, 7, and 8. The third count proceeds on the theory that defendants agents or servants while operating a freight train in DeKalb County uncoupled it in the town of Ft. Payne leaving two cars and a caboose to run down the main line without any engine attached to it and after discovering plaintiff's intestate's peril, wilfully and intentionally, through its agents and servants ran said cars against intestate and killed him. The sixth count alleges the same thing with the additional averment that after discovering intestate's peril, they could have avoided the injury but for the wanton and intentional acts of defendants servants and agents in running said cars over plaintiff's intestate, and the additional averment that this was done in a populous city at a point and time where a great number of people had to pass over and across tracks of defendant, and which fact was known to defendant's servants and agents. The allegations of the eighth count sufficiently appear in the opinion. The evidence tended to show that the intestate was killed near the freight depot of defendant in the town of Ft. Payne, Ala., about noon, and at a public road crossing or near thereto. The evidence further tended to show that quite a number of people passed this particular point at this time and that this fact was known to defendants servants and agents. The evidence tended to show that a freight train of defendants was being switched and that two cars and a caboose were cut loose from the engine and pushed with some momentum down the track striking intestate and killing him. There was conflict as to the speed of the cars at the time of the injury, some putting it as high as ten miles an hour and some as low as three.

The defendant offered evidence tending to show that intestate put himself in the way of the cars for the purpose of committing suicide, and the plaintiff offered evidence tending to rebut this theory to which objection was interposed and overruled.

The following charges were given at the request of the plaintiff:

"(41) To run a train at a high rate of speed and without signals of approach, without warning, at a place in a populous district of an incorporated town where those in charge of the train know the public are wont to pass with such frequency and in such numbers as that they may know there is a likelihood that there are persons on the track at such place, and that such persons may probably be injured by such trains, is such reckless indifference to the safety of such persons as would render the employer liable for injury resulting therefrom, notwithstanding there was negligence on the part of the person injured and no fault on the part of the servants after seeing the danger.

"(42) If the jury believe from the evidence in this case, that the defendant's agent or servant in charge of the two cars and the caboose ran them at a high rate of speed, without signals of approach, without warning, at the place where the decedent, William Dean, was killed, and if said place of killing was in an incorporated town, where those in charge of said cars and caboose knew the public at said time were wont to pass and did pass with such frequency and in such numbers as that those in charge of said cars and caboose knew that there was a likelihood that there were persons on the track at the time and place when and where deceased, William Dean, was killed, and that such persons, might be injured by such cars and caboose at that time and place, then that is such reckless indifference to the safety of such persons as would render the defendant liable for the injuries received; and in such event, plaintiff is entitled to a verdict, if Dean was thus killed, notwithstanding there was no fault on the part of servants of defendant, and notwithstanding the deceased, William Dean, was negligent."

Charges were requested by and refused to defendant as follows:

"(18) The court charges the jury that the mere intentional omission to perform a duty, or the intentional doing of an act contrary to duty, although such conduct be culpable and result in injury, without more, falls very far short of showing that the injury was wantonly or intentionally inflicted. Unless there was a purpose to inflict the injury, it cannot be said to be intentionally done; and unless an act is done or omitted to be done under circumstances and conditions known to the person that his conduct is likely to or probably will result in injury, and through reckless indifference to consequences he consciously or intentionally does a wrongful act or omits an act, the injury cannot be said to be wantonly inflicted.

"(19) The court charges the jury that one who is injured in consequence of being negligently on a railroad track cannot recover, unless the railroad employes are guilty of such gross negligence or recklessness as amounts to wantonness or intention to inflict the injury; and that this wantonness and intention to do wrong can never be imputed to them, unless they actually know, not merely ought to know, the perilous position of the person on the track, and with such knowledge failed to resort to every reasonable effort to avert disastrous consequence. And this rule applies as well to densely populated neighborhoods in the country as to the streets of a town and city."

"(23) The court charges the jury that if the place at which the killing occurred was not in a populous district of an incorporated town, and was not a place where those in charge of the train knew the public were accustomed to pass with such frequency and in such number as that they may know there is a likelihood that there are persons on the track at such time and place, then the jury cannot find a verdict for the plaintiff, unless they find that after discovery of peril some agent or servant of defendant consciously failed to do something which he knew it was his duty to do to prevent the happening of the injury."

"(31) The court charges the jury that the plaintiff cannot recover in this case unless you are reasonably satisfied from the evidence that defendant's agent or servant

in charge of the cars discovered deceased on the track, and knew from the surrounding circumstances that he would not or could not leave the track in time to prevent injuring him, and that with this knowledge, and having in mind what to do to prevent injuring him, he failed to use such means at command to avoid the accident.

"(32) The court charges the jury that, unless they are reasonably satisfied from the evidence that defendant's agent or servant in charge of the car could by the use of reasonable diligence have averted the injury to deceased after he was discovered on the track and after his perilous position and danger was known to them, they should find for the defendant.

"(33) The court charges the jury that, if they believe from the evidence that no skill and diligence and preventive efforts which the agent or servants could have put forth or used after they discovered Mr. William Dean on the track and his dangerous position, could have averted the injury, then they must find for the defendant.

"(34) The court charges the jury that it is only when the employes of the company operating the car fail to exercise reasonable care to avoid injuring him after the party on the track had been discovered and peril of the injury had become apparent that they are held to be guilty of wanton negligence.

"(35) The court charges the jury that they cannot find for the plaintiff on the eighth count of the complaint unless they are reasonably satisfied from the evidence that the cars were being run at a high and dangerous rate of speed at the time William Dean was struck."

"(37) The court charges the jury that if the place at which Mr. Dean was killed was not in a populous district of an incorporated town, and was not a place where those in charge of the train knew the public were accustomed to pass with such frequency and in such numbers as that they might know or have reason to believe there is a likelihood that there are persons on the track at such time and place, then the jury cannot find for the defendant, unless they find that after discovery of the peril of Mr. Dean defendant's agent or servant in charge of the cars failed to do something which he knew it was his duty to do to prevent injury.

"(38) To constitute wanton negligence, the act done or omitted must have been done or omitted with a present knowledge that injury would probably result.

"(39) If the jury believe the evidence in this case, they must find for the defendant on the second count in the complaint."

GOODHUE & BLACKWOOD, for appellant.—The court erred in giving charge 42.—*M. & C. R. R. Co. v. Martin,* 117 Ala. 367; *L. & N. v. Orr,* 121 Ala. 489. The court below committed palpable error in overruling the objection and admitting evidence, over the objection of appellant, as to the business, disposition, age, habits, industry, domestic relation and number of children of the deceased. This was no answer to the issue of suicide tendered by the defendant. Charges 35, 23, and 29 were erroneously refused to the defendant. We insist that upon the facts contained in the present record there was no room for the application of the principal that to run a train at a high rate of speed and without signal of approach at certain places may impute to the trainman reckless indifference to danger, nor can it be said that a place over which over 25 or 30 people pass along the track during an hour of time is a much frequented place. Charge 18 refused to defendant should have been given. *M. & C. R. R. Co. v. Martin,* 117 Ala. 382. Charge 19 should have been given as should charge 20.—*Glass v. M. & C. R. R. Co.,* 94 Ala. 588.

If we are correct in our contention that the undisputed facts in this case do not present the proposition of wanton negligence arising from the running of the train at a rapid rate of speed at a much frequented place, then charge 21 ought to have been given. The same is true of charges 31, 32, 33, 34. Charge 30 should have been given.

HOWARD & ISBELL and DAVIS & HARALSON, for appellee.—The court very clearly stated the law applicable to this case in a former opinion.—*Guest, Admr. v. A. G. S. R. R. Co.,* 136 Ala. 348; *Haley v. K. C. M. & B. R. R. Co.,* 113 Ala. 640; *S. & W. R. R. Co. v. Meadows,* 95 Ala. 137; *W. Ry. Co. v. Wood,* 86 Ala. 164; *Nave v. A. G. S.,* 96 Ala.

264; *Lee v. G. P. R. R. Co.*, 92 Ala. 271. Charges 41 and 42 given for plaintiff correctly assert the doctrine laid down in the above cases.

Defendants refused charges numbered 19, 21, 22, 28, 31, 33, and 34 assert a contrary doctrine and were properly refused. Defendants charges 21, 23, and 37 were abstract. The propositions asserted in charges number 20, 29, 30, 36, and 38 are covered by charges 13 and 15 given for the defendant. Charge number 18 is argumentative and properly refused. The defendant having tendered an issue of suicide by its evidence, the plaintiff was properly allowed to introduce the evidence offered by him in rebuttal.—11 Am. & Eng. Ency. of Law, (2nd Ed.) p. 502; 19 Ib. p. 77.

DOWDELL, J.—On the former appeal in this case (*Alabama Great Southern Railroad Co. v. Guest, Administrator*, 136 Ala. 348, 34 South. 968) the principles of the law applicable to the case under the issues on which it was last tried were then very fully stated. There is no substantial difference in the facts now and then. The law as there stated in the opinion of HARALSON, J., applies with equal force and pertinency here. The case was tried on the counts in the complaint counting on willful or intentional misconduct on the part of the defendant's servants or agents, or that which is in law the equivalent of willfulness, wantonness, or reckless indifference to probable results. What was said on the former appeal may well be repeated here: "It cannot be denied that plaintiff's intestate was a trespasser on defendant's track, to whom the company owed no duty except the exercise of reasonable care to avoid injuring him, if and after his peril became apparent to its employes; but they had no right to kill him on this account if they could avoid it. *Haley v. K. C. M. & B. R. R. Co.*, 113 Ala. 640, 21 South. 357. The doctrine thus stated and recognized, is not to be taken as of unqualified and unshaded application in all cases. A trespasser may not be yet discovered on the track of the company, but if the employe had reason to believe he was there it would be wantonness to take no care not to kill him. 'When a railroad runs its track through districts of a city, town, or village densely popu-

lated, and the demands of trade and public intercourse necessitates the frequent crossing of the track, it is the duty of those operating an engine over the track in such places to keep a lookout. This duty is not especially imposed by statute, but arises from the likelihood that in such places there are persons on the track, and the bounden duty to guard against inflicting death . or injury in places and under. circumstances where and when it is likely to result unless due care is observed. The duty arises when the circumstances exist which call for its exercise.'—*S. & W. R. R. Co. v. Meadors*, 95 Ala. 137, 10 South. 141; *L. & N. R. R. Co. v. Webb*, 97 Ala. 308, 12 South. 374; *L. & N. R R. Co. v. Anchors*, 114 Ala. 492, 22 South. 279, 62 Am. St. Rep. 116; *M. & C. R. R. Co. v. Martin*, 117 Ala. 367, 23 South. 231; *L. & N. R. R. Co. v. Brown*, 121 Ala. 221, 25 South. 609. 'To run a train at a high rate of speed and without signals of approach, where the trainmen have reason to believe there are persons in exposed positions on the track, as over an unguarded crossing in a populous district of a city, or where the public are wont to pass on the track with such frequency and in such numbers—facts known to those in charge of the train—as that they will be held to a knowledge of the probable consequences of maintaining greater speed without warning, so as to impute to them reckless indifference in respect thereto, would render the employer liable for injuries resulting therefrom, notwithstanding there was negligence on the part of those injured and no fault on the part of the servants after seeing the danger. *Ga. Pac. R. R. Co. v. Lee*, 92 Ala. 262, 9 South. 230; *Highland A. & B. R. R. Co. v. Robbins*, 124 Ala. 113, 27 South. 422, 82 Am. St. Rep. 153."

The doctrine that the duty of those in the management and control and running of locomotive engines and cars not to willwully or intentionally or wantonly kill or injure a trespasser is just as imperative as if the person so injured at the time of such injury was lawfully at the place is too well settled to admit of question. In other words, the duty owing to a trespasser not to willfully, intentionally, or wantonly injure him is as great as the duty owing to one who is not a trespasser. In such cases,

the law makes no possible distinction. If the conditions, as to the numbers and frequency of persons upon the tracks of the railroad company and of which its agents or servants have knowledge, exist, so as to constitute it in law wantonness to run its trains at a dangerous rate of speed at such time and place, then it is wholly immaterial whether such conditions are created by trespassers or by such as may have a lawful right to be on the tracks. If the caboose and two cars were cut loose from the train and allowed to run down the track in the manner and way and under the circumstances and conditions as averred in the complaint, such act and conduct on the part of those in control of the train was as a matter of law wantonness, and subsequent efforts on the part of defendant's servants or agents, after discovering the peril of the deceased, to avoid injury to him, would not exempt the defendant from liability for the injury that was inflicted.

Charge No. 41, given at the instance of the plaintiff, states the law as above laid down, and the giving of it was, therefore, free from error. Likewise charge 42, given for the plaintiff, asserts the doctrine as above stated. It may be that this latter charge had a misleading tendency in the last clause, and for that reason might have properly been refused yet the giving of it does not constitute reversible error. When the charge is taken as a whole, it is rendered evident that the statement in the last clause—"notwithstanding there was no fault on the part of the servants of defendant"—had reference to the conduct of the servants after the discovery of the peril of the deceased. It was certainly open to the defendant, if he conceived that there was any tendency to mislead the jury in this respect, to have counteracted any such tendency by requesting an explanatory charge.

The eighth count of the complaint does not aver that the detached cars and caboose were being run at a high and dangerous rate of speed at the time they struck the deceased except possibly in an inferential way. It is averred in the first part of this count that the two cars and caboose, which were detached from the train, were allowed to run down the main line of defendant's track, and in the conclusion of the count it is averred: "And on the day aforesaid, a few feet south of said public cros-

sing at a point near said freight depot, defendant's agents and servants ran said detached cars and caboose willfully, wantonly, or intentionally upon or against said William Dean, and killing him." The evidence was in conflict as to the rate of speed of the cars at the time they struck the deceased. One witness put the rate as low as two or three miles an hour. It was, therefore, open to the jury, under all the evidence. to find that the cars and caboose, when detached, were allowed to run down the main line at a high and dangerous rate of speed, and when they struck and killed the deceased the speed at this particular time, by the subsequent efforts of the defendant's servant or servants after discovery of the deceased's peril, had been checked to the low rate of two or three miles an hour; and on this phase of the case, under the law as we have above laid down, written charge No. 35, requested by the defendant. was properly refused.

Charge 29, requested by the defendant, was substantially covered by written charges 13 and 15, given at the request of the defendant. Charge 18, requested by the defendant, was argumentative, and there was no error in its refusal. Charges 19, 31, 32, 33 and 34, refused to the defendant, assert a contrary doctrine to that hereinabove laid down, and were therefore properly refused. Charges 20 and 30 were substantially covered by other written charges given at the instance of the defendant, and for this reason. if no other, there was no reversible error committed in their refusal. Charge 39 was faulty in form, and for this reason was properly refused.

Charges 23 and 37, requested by the defendant, were not abstract. as contended in argument by counsel for appellee, and on the facts hypothesized correctly stated the law. The trial court committed error in refusing to give each of said charges. It is insisted by counsel for appellee that charge 38, refused to the defendant, was substantially covered by written charges given at the instance of the defendant. We fail to find in the record any substantial duplicate for charge 38 in the written charges given for the defendant. This charge should have been given as requested. The definition of wantonness as contained in the charge is supported by *Brown's Case,* 121 Ala. 221, 25 South. 609, and *Bank's Case,* 132 Ala. 471, 31 South. 573.

[Trott, as Admr., v. Birmingham Ry. Light & Power Co.]

By the introduction in evidence on the part of the defendant of the showing as to the witness Shafer, the defendant tendered an issue of suicide by the plaintiff's intestate, and in so doing made it competent for the plaintiff to offer evidence in rebuttal of this theory; and such was the character of the evidence objected to by the defendant. The general rule of the relevancy of evidence is that all facts are admissible in evidence which logically tend to prove or disprove the fact in issue.—11 Am. & Eng. Ency. Law (2d Ed.) 502. We find no error in the rulings of the court on the objections to evidence along this line. It was competent to show the condition as to the frequency and numbers of persons passing along the defendant's tracks at the time and place in question, and there was no error in the rulings of the trial court on the defendant's objection to evidence offered along this line.

For the errors pointed out, the judgment of the court below must be reversed, and the cause remanded.

Reversed and remanded.

HARALSON, SIMPSON, and ANDERSON, JJ., concur.

*Action for Damages for Injury to Passenger.*