(77 South. 458)

NASHVILLE, C. & ST. L. RY. v. MYRICK.
(8 Div. 502.)

(Court of Appeals of Alabama. Dec. 18, 1917. Rehearing Denied Jan. 15, 1918.)

1. RAILROADS ⏩337(1) — CROSSING ACCIDENT—NEGLIGENCE—EQUIPMENT.

In an action against a railroad for damages from a collision at a highway crossing, where it was shown without dispute that the engineer made no effort to stop, it is immaterial that the engine was defectively equipped for stopping.

2. RAILROADS ⏩350(32) — CROSSING ACCIDENT—PROXIMATE CAUSE—QUESTION FOR JURY.

Whether failure to give statutory signals was the proximate cause of a collision at a railroad crossing, held a question for the jury.

3. RAILROADS ⏩350(1) — COLLISION AT CROSSING—LAST CLEAR CHANCE — QUESTION FOR JURY.

Whether enginemen discovered a runaway team approaching a crossing, held a question for the jury.

4. RAILROADS ⏩322—COLLISIONS AT CROSSING—DUTY TO STOP.

It is the duty of an engine crew after discovering a runaway team approaching a crossing to use all the means within their power to prevent collision; failure to do so being negligence.

5. RAILROADS ⏩339(1) — COLLISIONS AT CROSSINGS—RUNAWAY TEAM—WANTONNESS.

If an engineer or fireman discovered a runaway team approaching the track under such circumstances as to impress upon them the knowledge that the driver had lost control and would run upon the tracks and probably be struck, and if either were conscious of the peril, and with reckless disregard failed to use all their power to avoid a collision, the peril being discovered in time, they were guilty of wantonness.

6. RAILROADS ⏩350(13) — COLLISIONS AT CROSSINGS — CONTRIBUTORY NEGLIGENCE — QUESTION FOR JURY.

Whether a teamster was guilty of such contributory negligence as would bar recovery for simple negligence of trainmen in failing to give statutory signals, held a question for the jury.

7. RAILROADS ⏩328(8) — COLLISIONS AT CROSSINGS—DUTY TO STOP, LOOK, AND LISTEN.

A teamster who is unacquainted with a road and does not know in the night that he is approaching a railroad track is not negligent in not stopping, looking, and listening.

8. TRIAL ⏩253(4) — INSTRUCTIONS IGNORING ISSUES—WANTONNESS.

Where the question of wantonness was for the jury, it was proper to refuse to instruct not to find for plaintiff, unless defendant was guilty of negligence and plaintiff free from contributory negligence.

9. TRIAL ⏩253(4) — INSTRUCTIONS IGNORING ISSUES — COLLISIONS AT CROSSINGS — WANTONNESS.

An instruction that if a team was running away and ran into the side of the engine at a crossing to find for defendant was properly re-

fused as pretermitting negligence of trainmen after discovery of the peril, and wantonness.

10. RAILROADS ⊕▬348(2) — CROSSINGS — NEGLIGENCE—EVIDENCE—INSUFFICIENCY.

Evidence *held* insufficient to sustain a finding that an engine ran into a wagon at a crossing; it being a more reasonable conclusion that the team while running away ran into the side of the engine.

Appeal from Law and Equity Court, Madison County; James H. Ballentine, Judge.

Action by J. A. Myrick against the Nashville, Chattanooga & St. Louis Railway, for damages for injury to a team of mules and wagon. Judgment for plaintiff, and defendant appeals. Reversed and remanded. The facts sufficiently appear. The following charges were refused to defendant:

(6) Unless you believe from the evidence that defendant's servants or employés were guilty of some negligence, causing the injury, and that the driver Sharp did not contribute thereto proximately by his own negligence, your verdict must be for defendant.

(8) If you believe from the evidence that the team was running away, and ran into the side of the engine, your verdict must be for defendant.

Spragins & Speake, of Huntsville, for appellant. R. E. Smith and Taylor & Watts, all of Huntsville, for appellee.

BROWN, P. J. This is an action for damages for the killing of a mule and injuries to a wagon owned by the plaintiff, and alleged to have been proximately caused either by the negligence of the defendant or its servants, or wantonness on the part of the servants in running a train against the wagon and team while it was crossing the defendant's tracks at a public road crossing.

The evidence shows that only one of the mules, the one working on the right-hand side, was killed, and that the wheels of the wagon on the right-hand side were broken off and the wagon otherwise injured. The evidence shows that the passenger train that collided with the wagon and team was leaving the station at Huntsville, and was going north approaching the crossing around a curve, the crossing being just outside the corporate limits. The team was approaching the crossing from the west along a road that leads from the Pulaski pike into Church street, and crosses the defendant's track, as the evidence tends to show, from 50 to 150 yards east of the fiber factory located on the public road.

At a point about two-thirds of the distance between the railroad crossing and the fiber factory on the public road is located a bridge which was crossed by the plaintiff's team, and the evidence shows that the crossing was slightly elevated above its surroundings. The collision between the train and the team occurred just before or about dawn on the 5th of January, 1915. The evidence tended to show that the rays of the headlight of the engine as it approached the crossing around the curve played along the public road over the space between the fiber factory and the crossing, and the plaintiff's witness Blair testified that the rays of the headlight flashed upon the wagon and team when it was at or near the bridge. While this witness further testified that the mules were standing at this time, there is other evidence showing that the mules became frightened just about the time they passed, from behind the fiber factory, that the driver Sharp lost control over them, that they were "running away," and that he could not have stopped them if he had known of the approach of the train. There was evidence offered by the plaintiff tending to show that the statutory signals were not given.

The evidence offered by the defendant showed that the enginemen were keeping a lookout ahead, within the range of the headlight, that they did not discover the team approaching the crossing, and that they had no knowledge of its approach until the team ran into the train, the tongue of the wagon striking the tender of the locomotive; that no effort to use the appliances to check the speed or stop the train was made until after the collision. There was also evidence that the statutory signals were given as the train approached the crossing.

[1] We think it clear from the evidence in this record, if we assume that the defendant failed to acquit itself of negligence in respect to the equipment of the train with proper appliances for stopping it or checking its speed, that such negligence was not the proximate cause of the alleged injury; it being shown without dispute that the engineer made no effort to use the appliances at hand, the equipment of the train with other and different appliances would not n any way have aided in preventing the injury, and hence a failure to so equip the train was not the proximate cause of the injury. Western Ry. Co. v. Mutch, 97 Ala. 194, 11 South. 894, 21 L. R. A. 316, 38 Am. St. Rep. 179; Bryant v. Southern Ry., 137 Ala. 488, 34 South. 562; Cardwell v. L. & N. Ry., 185 Ala. 628, 64 South. 564.

[2] The testimony of the witness Blair that the team was standing as the headlight of the engine flashed on it near the bridge, which, as the evidence tends to show, was within from 50 to 100 feet of the railroad tracks, is in conflict with the other testimony offered by the plaintiff, to the effect that the team began to run immediately after passing the fiber factory, and continued to run, notwithstanding the efforts of the driver to check them, until struck by the train; it was also shown that the driver was not aware of the approach of the train. If the team was standing at the bridge under the control of the driver, the giving of the statutory signals might have given the driver such warning of the train's approach as to

have prompted him not to attempt to cross the tracks, and it was for the jury to determine whether the failure to give the statutory signals, if there was such failure, was the proximate cause of the collision between the train and the team.

"Unless the evidence bearing upon the question whether the defendant's negligence was the proximate cause of the injury complained of is entirely free from doubt or adverse influence, that question must be submitted to the jury for decision, under proper instructions by the court." Briggs v. B. R., L. & P. Co., 188 Ala. 262, 66 South. 95.

[3, 4] There was nothing to obstruct the view between the approaching engine and the public road along which the wagon and team were moving towards the crossing. The evidence shows or tends to show that the rays of the headlight played along the entire stretch of road between the fiber factory and the crossing, that both of the enginemen were keeping a lookout ahead and within the range of the headlight, and that the light flashed upon the mules and wagon when within from 50 to 100 feet of the crossing. It was therefore a question for the jury as to whether the enginemen discovered the approaching team, if it was in fact approaching the tracks. If the team was discovered, and it was at the time running in the direction of the track in such close proximity thereto as that it would probably be injured, it was the duty of the defendant's engineer to use all the means within his power to prevent a collision, and a failure to take such steps would be negligence, and if the injury was proximately caused thereby, the defendant would be liable, unless such contributory negligence as would bar a recovery intervened. Southern Ry. Co. v. Forrister, 158 Ala. 477, 48 South. 69; L. & N. R. R. Co. v. Calvert, 172 Ala. 597, 55 South. 812.

[5] If the engineer or fireman discovered the team approaching the tracks under such circumstances as to impress upon them the knowledge that the driver had lost control of the team, and that in spite of his efforts it would run upon the railroad tracks in front of the approaching train and probably be struck, and they were so impressed as to make them or either of them conscious of the peril of the situation, and with a reckless disregard of the consequences, they or either of them failed to use such preventative efforts to avoid the injury as was within their power, if the peril was discovered in time for preventative efforts, they were guilty of wantonness. Southern Ry. Co. v. Forrister, supra; A. C. S. R. R. Co. v. Guest, 144 Ala. 373, 39 South. 654; L. & N. R. R. Co. v. Loyd, 186 Ala. 119, 65 South. 153.

[6, 7] As to whether the driver of the team was guilty of such contributory negligence as would bar a recovery for the simple negligence of the trainmen in failing to give the statutory signals, if there was such failure, was also for the jury. It was not shown that the driver of the team was familiar with the location of the railroad tracks, or that he had any knowledge of their location. In fact, the evidence shows that he made inquiry about the road from the witness Blair. Manifestly, if the driver did not know that he was approaching a railroad track, it could not be said that he was guilty of negligence in not stopping, looking, and listening for an approaching train, if he could have done so.

These conclusions justify the action of the court in refusing the several affirmative charges requested by the defendant.

[8] Charge 6, besides being confusing, was properly refused, as the question of wantonness was one for the jury.

[9] Charge 8 pretermits consideration of negligence on the part of the trainmen after the discovery of peril, and ignores the question of wantonness.

Sharp, the driver in charge of plaintiff's team, testified in respect to the collision:

"I came from Mr. Myrick's house and was carrying a trunk to the Southern depot in a covered milk wagon with sides to it, and was driving two mules traveling on the road which leads from the Pulaski pike by tahe brickyard and the fiber factory and comes into Church street. The mules ran away with me, and I *reckon* the train must have run over the one that was hurt. I could not hold them. They ran upon the railroad track, and the train hit them. I didn't hear the train coming and didn't see the headlight, no whistle was blown, and no bell rung. I was housed up. The mules started to run about even with the fiber factory and ran over a little bridge between that and the railroad track. The train knocked the mules around and tore the wagon all to pieces, and one mule fell dead after going a few steps. * * * The front part of the engine hit the right-hand mule and struck the wagon. * * * I didn't see the train until it hit the mules. The front of my wagon was open and didn't have any glass in it. The train knocked both mules down and turned over the wagon, and I came out under the mules. Half of the wagon wheels were broken off—the wheels on the right of the wagon. *It must have been the front part of the engine that struck the wagon. I didn't see what part struck. I didn't see the headlight.* The first I knew of it was when it knocked the mules around."

The plaintiff also offered some evidence of one or more witnesses that:

"From appearances there [on the tracks], two wheels of the wagon had gotten on the railings and on the wood to which the rails of the railroad track were fastened just inside the rails."

It was shown that the force of the collision threw the team and the wagon into the ditch on the north side of the public road and on the west side of the railroad. Only one of the mules was injured. It is more than probable that if the mules had gone onto the tracks so that the front wheels of the wagon were on the inside of the rails, that the force of the collision would have thrown the mules on the east side of the track, and not only one, but both, would have been injured.

[10] We are of opinion that the great preponderance of the evidence in this case is so palpably against the conclusion as expressed

in the verdict, and points to the more reasonable conclusion that the team ran into the train, and that the damages suffered by the plaintiff were the result of an unavoidable accident, that the issues should be submitted to another jury, and that the trial court erred in refusing the motion for a new trial.

For this error, the judgment must be reversed.

Reversed and remanded.